# EXHIBIT "A"

# OFFICE OF THE BAR COUNSEL
## BOARD OF BAR OVERSEERS OF THE SUPREME JUDICIAL COURT
99 High Street
Boston, Massachusetts 02110
(617) 728-8750
Fax: (617) 482-2992
www.mass.gov/obcbbo

Constance Vecchione
Bar Counsel

April 15, 2008

**PERSONAL AND CONFIDENTIAL**

Jose A. Espinosa, Esquire
793 Centre Street
Jamaica Plain, MA 02130

    RE:  **B.B.O. File No. B1-08-0106 (Esther Arias)**

Dear Mr. Espinosa:

      Enclosed is correspondence obtained by the Office of the Bar Counsel that raises questions regarding your conduct that, if true, may violate Supreme Judicial Court Rule 3:07, the Massachusetts Rules of Professional Conduct. It is the responsibility of the Office of the Bar Counsel to investigate all matters involving alleged misconduct by an attorney. While no disposition will be recommended or undertaken by the Bar Counsel until an attorney has been afforded an opportunity to respond, failure to respond without good cause may constitute misconduct warranting appropriate discipline or administrative suspension under Supreme Judicial Court Rule 4:01, § 3.

      Please review Supreme Judicial Court Rules 3:07 and 4:01. Under Section 2.6(2) of the Rules of the Board of Bar Overseers, your response must be received by this office no later than **Wednesday, June 4, 2008**. In your response, please respond to Ms. Arias' specific claims of misconduct. In addition, please identify the fee agreement you had with Ms. Arias including, but without limitation, the amount of the fee that you were paid. Finally, please provide a **complete** copy of the file(s) for all matters in which you represented Ms. Arias.

      Thank you for your prompt attention to this matter.

Very truly yours,

Robert I. Warner
Assistant Bar Counsel

Enc.

To: The Bar Association

From: Esther Angelica Arias

Date: 4-25-08

Re: To Report Attorney Jose Espinosa = #617-528-___

RECEIVED
MAY - 2 2008
OFFICE OF
BAR COUNSEL

The Bar Association,

I'm writing to you once again in Regards to my situation, Attorney Espinosa was hired by my Boy-friend Lorenzo Martinez to Represent Me in 2 federal cases, back in July 2007 Espinosa was Retained and at the same moment He was provided with my Pass-port which is my alibi in one of the cases, Espinosa Copied my Passport and informed my Boyfriend that He was Going to handle the matter and provided the Gov. with a Copy of the passport So they can prove that I wasn't in this Country for Some of the Charges I was charged with, when I Questioned Espinosa Regards to my Passport He Advised me that He wanted to Surpose the Gov. and that He was Going to hold my alibi for trial, I objected to it but He said that He knew what He was doing, when my trial day came, Espinosa was Questioned by the Judge of why He didn't Provide the passport by the Set date the Court Required, Espinosa told the Judge that He was not aware of my passport into that moment Espinosa failed to investigate my alibi, lied to the Court, lied to me, and did the opposite of what a

RECEIVE
8009
OFFICE OF
BAR COUNSEL

Defense Counsel Shall have done, Even the court appointed Counsel that had my Cases before Espinosa testified in Court that He Provided Espinosa with a copy of my Passport with my whole filed, and Espinosa keep's Denying it, Another complaint is that Espinosa Refused to file any objections to my PSR, and even advised me Not to filed any on my own because it would look better for my appeal, Espinosa Informed my Boyfriend and me that He Gave me ineffective Assistance in Both of my Case. So I can Claim it during my appeal, He Refused to call any witness on my behalf, he Refused to Provide any Evidence on my Defense. Espinosa was Introduced to my Family by one of He's Clients, her Name is leslie Abad who is Also a Federal Detainee, of which I've find out Few Information, apparently Espinosa will Get the Benefit to help one of He's Clients by Giving up one of He's Client, what I feel what is Happening in my Case is, that Espinosa turned me in to be Able to help leslie Abad in Her Sentence, I want an investigation to be Conducted, if it wasn't because I explained my Situation with Espinosa to Attorney Page Kelley, and to Victoria Bonilla I wouldn't have been Able to find out that Espinosa was Giving me the wrong advice and wouldn't

have Realize to Inform the Courts of He's Mes-
Conduct, Attorney Kelley and Bonilla are my
witness, because everytime that Espinosa Advised
me of things that didn't Sound Normal to me
I called Attorney Kelley and Bonilla and they
Advice me of the Correct Things, Attorney Kelley
even Contacted Espinosa to try to find out why
things were been wrong, I even contacted Attorney
Michael Manzie who also I told About Espinosa's
Misconduct, also Attorney Christopher Nathu, I have
a lot of witness of Espinosa's Misconduct,
Espinosa even allowed the Gov. to used a false
Prior Conviction against me when I took the
Stand during my trial, He informed me during
trial that I did had a prior Conviction of forgery,
and explained to Espinosa that, that was Impossible,
because I was never Convicted of forgery but
He told me that He Check all the Paperwork, and
that He seen it, I was able to obtain a copy
of my CORI 2 Months later and I confirmed that
Espinosa had lie to me once again. Due to
Espinosa unprofessional actions lies, Misconduct I
was Sentence to 17 Yrs in Prison. This is my life,
I'm a single mother of 4 kids and I trusted
Espinosa for Representation, Espinosa is A Thief
Who Shall not be holding a License of Defense
Counsel, I'm asking, Begging Your Association

to do Something about this before Espinosa
destroys Somebody else life.

1- Refuse to Provide the Court-DA- with my alibi.

2- Denied of when He obtained my Alibi-Passport- in His house.

3- lied to the Judge about my Passport.

4- Failed to investigate my Alibi- Passport-

5- Refused to object to PSR.

6- Advised me Not to object to PSR.

7- Allowed the Court to use a false prior Conviction.

8- informed me and my Girlfriend that He Provided me with
ineffective assistance.

9- He told the Court that I Refused to take a Copy of
PSR, when the Truth was that He Refused to Give it
to me.

10- was paid to Vacate or to File a Motion to
Vacate a Prior Conviction and then Refused to do So.

11- Espinosa destroyed my Life and my kid's life

12- He Advised me to threaten Him in front of the Jail Guards.
Please do Something.


Respectfully Submitted


Esther Angelica Arias


Espinosa Asked me to threaten Him in front of the Guards or
In front of the Judge So He Can Withdraw from my Case, to Get me
In More trouble.

I Also found out that Espinosa didn't filed
A notice of Appeal in either one of my cases,
even thought I Asked Him to file it in Both
cases, I became cuwared of it and I filed on
my own.

Also Espinosa didn't Show up for the
Jury Selection neither for the Jury's Verdict,
in Exchange he Sent He's Associate, who I
didn't Met before, He failed to be Present on
2 important days during my trial without my concent,

Espinosa is a Professional thief and liar, who
will do anything for money and will keep Not
Remorse. I begged you, to do something about this
Don't permit this to happen again, Please.

                    Respectfully Submitted

My Boyfriend who          Esther Angelica Arias
Retained Espinosa.
Name Lorenzo Martinez
P.O Box 2170
LYNN, MA 01903
# 617-435-9292
You can Contact Him with that
Information.

To: Bar Association
From: Esther Angelica Arias
Re: Additional Complaints Against Attorney
Jose Espinosa Phone # 617-522-7849.

RECEIVED
MAY - 5 2008
OFFICE OF
BAR COUNSEL

Dear Bar Association,

I have filed a complaint against Attorney
Jose Espinosa, but As I informed you
in my first letter there are numerous
complaints that you need to be aware of,
the next complaint is that Espinosa decussed
with other inmates client about my case
and I know for fact about it, also I
became awared that Espinosa discussed about
my case with one of the Gov. Witness
Prior to my trial and this information also
I know for fact that did happened.
Espinosa's misconduct shall be unacceptable
or to this Bar, No excuse could be
accept it for any or he's misconduct,
He has violated my Rights as a client,
has lied and done the opposite of a
Defense Counsel.
        Thank you,

            Esther Angelica Arias



**JOSE A. ESPINOSA**
Attorney At Law
_____

793 Centre Street, Jamaica Plain, MA 02130
Telephone: (617) 522-4849
Facsimile: (617) 522-5290

June 17, 2008

Mr. Robert I. Warner
Assistant Bar Counsel
Office of the Bar Counsel
Board of Bar Overseers of the Supreme Judicial Court
99 High Street
Boston, Massachusetts 02110

Re:   **B.B.O. File No. B1-08-0106 (Esther Arias)**

**HAND DELIVERED**

Dear Mr. Warner:

I am in receipt of the above-referenced complaint and have drafted an answer to same. In reading the letter which you sent dated April 15, 2008 (although the documents indicate that they were received by the Board of Bar Overseers on May 2 and May 5, 2008 respectively) I noted that you are also requesting copies of the complete files for all matters that I represented Ms. Arias.

The complete files consists of nearly three "bankers" type boxes containing thousands of documents as wells a CDs with discovery which I have not had the opportunity to copy. I need to make these copies in my office as the cost of copying these documents commercially through an entity such as Kinkos would run into the hundreds of dollars. I received a total of Ten Thousand ($10,000.00) for two trials in federal court that jointly lasted approximately eight (8) weeks, not to mention the hundreds of hours of preparation that I put into this case prior to and subsequent to the guilty verdicts in each case.

I am not going to be able to have copies of all the files for you until Monday, June 23, 2008 and that's by putting someone to do so virtually non-stop. I am certain that I have not done anything unprofessional in this matter and I do apologize for the delay in responding to this complaint. I am taking these allegations extremely seriously, but the myriad allegations that Ms. Arias raises in her complaint have required me to spend an inordinate amount of time preparing an answer while at the same time handling my ongoing cases.

Although I am answering the allegations in Ms. Arias' complaints, I ask you to permit me to submit this as a draft answer and to permit me to provide a more detailed answer along with the files that you have requested on Monday, June 23, 2008.

By way of background, Ms. Arias' boyfriend, Lorenzo Martinez called my office in July, 2007 and asked me to visit Ms. Arias for possible representation. When I visited Ms. Arias at the Bristol County House of Corrections I had gone into the PACER system in place in the Federal Court system and obtained a copy of the docket sheets in one of her cases. When I visited Ms. Arias I learned that in addition to a tax fraud case that was scheduled before Judge Woodlock for October, 2007, she had a pending bank fraud and HUD fraud case before Judge Wolf that was scheduled earlier than Judge Woodlock's case. Ms. Arias and I spoke at length about her cases and I asked her why she wanted to change attorney at this late stage of the case. Ms. Arias informed me that she was being represented by Attorney John Palmer Moss and that she was not comfortable going to trial with him because she had lost confidence in him. She told me that she did not trust Attorney Moss' judgment and advice and wanted a different person to assess and evaluate her cases.

After further discussion I told Ms. Arias that if the court allowed me to enter my appearance I would need time to prepare the case. I also negotiated with her regarding my fees which I told her would be between $13-$15,000.00 provided I did not have to do anything but review the and assess the cases and if necessary try the cases. I then spoke with Mr. Martinez and he told me that he could only pay $13,000.00. $5,000.00 to start and the balance he would pay prior to the conclusion of the cases. To date I have been paid $10,000.00.

I received substantial boxes of evidence from Attorney John Palmer Moss at the end of July, 2007 and I immersed myself in reviewing all the documents, charts and evidence pertaining to the cases. I was visiting Ms. Arias regularly as I became more familiar with the cases to have her fill-in any questions that I had regarding her case [Ms. Arias has a very good knowledge of the documents in her file]. In the interim I was also in discussions with the government to assess their position as it affected Ms. Arias and to determine whether a trial was necessary in this case. In mid-September, 2007 prior to the Judge Woodlock case for tax fraud, I advised Ms. Arias that in my opinion, both cases were overwhelmingly against her and that I strongly urged her to not go to trial and to plead guilty instead. Ms. Arias told me that she would not plead guilty to the tax case but instead wanted to take her chances that she would be found not guilty.

Ms. Arias was found guilty of all but two counts in the tax fraud case. With regards to the case before Judge Wolf involving bank fraud and HUD fraud, after she was found guilty of the first case, I again unequivocally advised Ms. Arias not to go to trial but to plead guilty. Ms. Arias refused and proceeded to trial.

In her complaint, it is difficult to distinguish about which case Ms. Arias complains about. I will try to identify the complaint by referring to the "Judge Woodlock" case for tax fraud and to the "Judge Wolf" case for bank fraud and HUD fraud.

Ms. Arias alleges that her alibi defense in the Judge Wolf case was somehow mishandled by me is wrong. Prior to my representing Ms. Arias she had been represented by Attorney John Moss at the Federal Court level and by an attorney named Raymond Buso at the Lynn District Court. None of these attorneys deemed the passport- which was a United States Passport issued in Ms. Arias' name bearing entry and exit stamps from the Dominican Republic during periods when she was alleged to have been committing bank fraud in the United States- deemed the stamps to be genuine, I never received a copy of the passport until a week prior to Ms. Arias' second trial and then the original was not produced until Ms. Arias, against my strong advise, took the stand on her own behalf before Judge Wolf in Federal Court. Notwithstanding the lateness of Ms. Arias producing the passport the government permitted Ms. Arias to testify about the passport and to present her alibi.

During her cross-examination Ms. Arias testified that she did not remember the airline that she took to the Dominican Republic; where she sat on the plane and other matters regarding the veracity of her alleged trip to the Dominican Republic. The Government in rebuttal called an official from the United States Department of Homeland Security's Bureau of Immigration and Customs Enforcement who testified that all passports coming to and leaving the United States whether issued by the United States or a foreign government, were all scanned and stored in a database. That this activity had been in place for several years, including the year that Ms. Arias claims to have used to travel to the Dominican Republic. The government also presented evidence that a complete search of said database revealed that the passport issued to Ms. Arias and which she presented into evidence had never been used to travel out of or into the United States.

Ms. Arias received the sentence that she received because she refused to listed to my advise. Both cases that I represented her in had evidence that was overwhelming. The first case before Judge Woodlock Ms. Arias heeded my advise and did not testify. The second case before Judge Wolf resulted in a guilty verdict as well. However, at the end of her trial and after the verdict had been rendered by the jury Judge Wolf told Ms. Arias that he thought her a very dangerous individual who had perjured herself during her testimony and who had obstructed justice. Both Judge Woodlock and Judge Wolf exceeded the guidelines. Judge Woodlock sentence Ms. Arias to 5 years in jail and Judge Wolf sentence Ms. Arias to 12 years in jail. Had Ms. Arias followed my advice, I feel strongly that she would have saved herself a substantial amount of time on each case and could possibly been sentenced to serve concurrent sentences.

Ms. Arias fired me after she was sentenced by Judge Woodlock. Up to that point I thought that our attorney-client relationship was in good stead. Ms. Arias did not like my argument to Judge Woodlock on her sentencing. I prepared all the necessary documents for her sentencing. Ms. Arias sent in her own appeal to the First Circuit Court of Appeals after she was found guilty in Judge Woodlock's case. She sent her own appeal as well after she was sentenced by Judge Woodlock. She did the same in Judge Wolf's case. After Judge Woodlock sentenced Ms. Arias, Ms. Arias began to bicker with me and second guess my strategy for her sentencing. Ms. Arias sent several letters to Judge Wolf and later to Judge Woodlock complaining about my trial tactics and decision in her case. Judge Wolf held hearings regarding Ms. Arias complaints, including her complaint about the passport, and in each instance he concluded that Ms. Arias was seeking to delay the finality of her sentence. Ms. Arias refused to accept the Pre-Sentence

Report not only from me, but from Probation Officer Bocon who was ordered by Judge Wolf to hand-deliver the Pre-Sentence Report to her at the Bristol County House of Corrections. When Ms. Arias initially sought to replace me, she wanted the court to appoint her counsel. Judge Wolf refused her request and gave her the choice to continue having me as her lawyer; hiring a new lawyer who would step in immediately because he was not going to grant any delays, or represent herself. When I needed to review the Sentencing Memorandum that I wanted to submit to the Court with Ms. Arias, she refused to do so and told me that I was not authorized to submit anything on her behalf. I sought to withdraw because Ms. Arias refused to work with me. After a hearing Judge Wolf allowed me to withdraw as counsel but ordered that I remain as stand-by counsel should Ms. Arias need to consult any point of law with me. Ms. Arias never requested my advice. I never told her not to submit any objections to her Pre-Sentence Report. In fact, when Ms. Arias brought this issue before Judge Wolf I explained to the Court that I had merely cautioned Ms. Arias about submitting a document that in my opinion did not have any legal basis.

With regards to Ms. Arias complaint that she had to call other attorneys to get legal advice because I was giving her bad advice. Ms. Arias always was seeking opinion from other attorneys. Ms. Arias has a very difficult time dealing with facts that disprove her legal conclusions.

Ms. Arias' allegations that somehow her criminal record was not adequately represented to the Court at time of sentencing is also not accurate. Ms. Arias' criminal record was obtained from her CORI report. Both the Assistant United States Attorney prosecuting this case, Victor Wild, and the probation officer who did the Pre-Sentence Investigation came up with the same records. I was never hired, nor did I get paid, nor did I agree to seek to vacate any convictions.

It is preposterous for Ms. Arias to claim that I told her or her boyfriend that I had been intentionally ineffective in any of her cases. In fact both judges complimented me on the record for the efforts I had done in defending Ms. Arias in two very complex and difficult cases.

It is equally preposterous that I suggested to Ms. Arias for her to threaten me in front of the Court in order to have the Court allow me to withdraw. When it was time to withdraw because of the complete and utter breakdown of communication, I did so.

Ms. Arias alleges that I failed to show up for the Jury Selection and the Jury's Verdict. This pertains to the case with Judge Woodlock. Prior to beginning her trial Ms. Arias was aware that I had a jury trial in the Suffolk Superior Court and that my associate, Kristina Hedin, would be assisting her in the jury selection. Ms. Arias was asked on the record by Judge Woodlock if she had any objections to this, she did not express any objections and Ms. Hedin with Ms. Arias' assistance, selected the Jury. I tried the case from the opening to the closing. Ms. Hedin was in the trial every day thereafter, either next to me or in the Court with the exception on two days, where she had to attend to other matters pertaining to the office. Ms. Hedin knew Ms. Arias' case as well as I. The jury was out several days before rendering a verdict. It had been agreed between Ms. Arias and myself that either me or Ms. Hedin would take the verdict when it came. I had shown up every day of deliberations and there was one day that I had to attend to another matter in the Stoughton District Court. I was coming from the Stoughton District Court and was

stuck in the Southeast Expressway when I got the call from Ms. Hedin that a verdict had been rendered and whether she should ask the Court to wait for my arrival. Because of the uncertainty of the traffic conditions I instructed Ms. Hedin to accept the verdict. I arrived about ten minutes after the verdict had been rendered and spoke with Ms. Arias regarding same.

Ms. Arias alleges that I somehow used her to get another client a benefit. I certainly do not want to discuss client confidentialities involving another client who is not a subject of this complaint. However, it is a matter of public record that anything that had been negotiated between myself on behalf of my client Leslihe Abad and the United States Government was in place prior to my representing Ms. Arias. Whatever benefits or consideration Ms. Abad received were the result of negotiations. Ms. Arias' cases had nothing to do with Ms. Abad's matters.

Ms. Arias alleges that I spoke to other inmates about her case and that I spoke with a government witness about her case. This is incorrect. I never spoke with any inmates about Ms. Arias' case. I did speak with her uncle, whose children's identities and social security numbers had allegedly been used by one of Ms. Arias' codefendants without his permission. My conversation was merely in preparation for her trial. Other than answering some questions regarding the case, I did not discuss any specifics with her uncle.

Again, I request that you accept the above as a draft answer and permit me to supersede this answer with a more detailed answer that will be accompanied by the entire files in this case.

Respectfully,

Jose A. Espinosa

# OFFICE OF THE BAR COUNSEL
## BOARD OF BAR OVERSEERS OF THE SUPREME JUDICIAL COURT
99 High Street
Boston, Massachusetts 02110
(617) 728-8750
Fax: (617) 482-2992
www.mass.gov/obcbbo

CONSTANCE V. VECCHIONE
BAR COUNSEL

July 9, 2008

PERSONAL AND CONFIDENTIAL

Jose A. Espinosa, Esq.
793 Centre Street
Jamaica Plain, MA 02130

RE:  BBO File No.  B1-08-0106 (Esther A. Arias)

Dear Mr. Espinosa:

Enclosed please find a copy of a letter sent to Esther A. Arias in the above matter.

This file has been closed without disciplinary action. All records in this office indicate that it was docketed administratively as a grievance, defined by the Rules of the Board of Bar Overseers, Section 1.2, as "a statement of alleged misconduct or request for investigation." A "formal complaint" is a grievance that has been docketed as a formal complaint for any of the reasons stated in Section 2.4 of the Board Rules.

Thank you for your cooperation.

Very truly yours,

Robert I. Warner
Assistant Bar Counsel

RIW/jr
Enclosure

# OFFICE OF THE BAR COUNSEL

BOARD OF BAR OVERSEERS OF THE SUPREME JUDICIAL COURT
99 High Street
Boston, Massachusetts 02110
(617) 728-8750
Fax: (617) 482-2992
www.mass.gov/obcbbo

Constance V. Vecchione
Bar Counsel

July 9, 2008

Esther Arias
D.W.W.D.F. 950 High Street
26214038
Central Falls, RI 02683

RE: BBO File No. B1-08-0106 (Jose A. Espinosa, Esquire)

Dear Ms. Arias:

I have reviewed the complaint you filed with this office regarding Attorney Espinosa's conduct, Attorney Espinosa's response to that complaint, and your comments to that response. I have also looked at relevant pleadings and spoken with Attorney Page Kelley and Attorney John Moss.

In part, your complaint alleges negligence or malpractice in that Attorney Espinosa did not provide you with effective representation. While you are obviously displeased with the results, I do not believe that Attorney Espinosa's actions violated any of the rules of professional conduct. Should a subsequent decision by any court suggest otherwise, please bring this matter to my attention at that time, and I will reconsider this decision. Your complaint also raises the issue of the fee paid to Attorney Espinosa. Fee disputes are not generally within the jurisdiction of this office, and under these circumstances, a decision has been made to close this file.

Enclosed please find a copy of a letter from the Chair of the Board of Bar Overseers advising you of your right to have this decision reviewed by a member of the Board.

Very truly yours,

Robert I. Warner
Assistant Bar Counsel

Enclosure

cc: Jose A. Espinosa, Esquire