UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ESTHER ARIAS | ) | |
| | ) | CASE NO. 06-10305-MLW |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |

GOVERNMENT'S OPPOSITION
TO DEFENDANT'S SECTION 2255 MOTION

Defendant Esther Arias has filed an amended motion under 28 U.S.C. § 2255.   Dkt. No.

383.   The Government opposes the defendant's motion for the reasons discussed in the following

memorandum.

WHEREFORE, the Government moves this Court to deny the defendant's motion.

Respectfully submitted this 15th day of July, 2014.


CARMEN M. ORTIZ
United States Attorney

By:   /s/ Victor A. Wild
VICTOR A. WILD
Assistant U.S. Attorney

1

# MEMORANDUM

# BACKKGROUND

On September 27, 2006, Esther Arias was indicted on forty-seven counts of conspiracy, mail fraud, bank fraud, theft of mail and government property, and identity theft.    Criminal Case No. 06-10305-MLW. Dkt. No. 1.    On October 4, 2006, Attorney John P. Moss was appointed to represent Arias. Dkt. No. 10.[1]    On July 23, 2007, Arias retained Attorney Jose Espinosa as her counsel, and on July 27th, Moss moved to withdraw from the case, a motion granted by the Court on August 2nd.    Dkt. Nos. 99, 102, 107.    Following the Government's dismissal of counts Two and Fifteen, Arias proceeded to jury trial on the remaining thirty-seven counts in a proceeding before Chief Judge Wolf.    Dkt. Nos. 156, 192.    On December 7, 200-8, Arias was found guilty of all thirty-seven counts.    Dkt. No. 188.

Prior to sentencing, Espinosa filed a motion to withdraw as counsel on March 27, 2008, citing Arias' refusal to cooperate with him and her "indicat[ion] in no uncertain terms that I am not authorized to submit anything to the court on her behalf."    Dkt. No. 224 ¶ 2.    Granting the motion, the Court took the precaution of appointing Espinosa as standby counsel to be available as Arias continued representing herself.    Dkt. No. 229.

On April 22, 2008, after three days of hearings, the court sentenced Arias to 144 months imprisonment on all counts to run concurrently with each other but consecutively to the sentence

---

[1] Moss had also been appointed as Arias' counsel in a separate criminal proceeding before Judge Woodlock beginning in April 2006, in which she was indicted on one count of Conspiracy to File False Tax Claims in violation of 18 U.S.C. § 286, and seventeen counts of False and Fraudulent Tax Claims in violation of 26 U.S.C. § 7206(2).    Criminal No. 06-10092-DPW, Dkt. No. 1.    Moss filed a motion to withdraw as counsel in that case on August 21, 2007, citing *inter alia* that "Ms. Arias refuse[s] to speak to me and it is clear to me that she does not intend to communicate with me any further."    *Id.*, Dkt. No. 99 at 3.    Arias replaced Moss by retaining Attorney Jose Espinosa.    *Id.,* Dkt. No. 86.    Arias was convicted on sixteen counts of conspiracy and tax fraud. *Id.* Dkt. No. 193.    Arias subsequently raised a number of frivolous complaints against Espinosa prior to her sentencing—which the Court dismissed as "a contrivance that has been set up in an effort to delay or otherwise frustrate the resolution of the case."    *Id.*, Dkt. No. 230 at 5.

imposed by Judge Woodlock in Criminal Case 06-10092-DPW; the Court also ordered five years of supervised release, restitution in the amount of $105,602.33 and a $3,700 special assessment. Dkt. No. 373 at 1.

On December 7, 2007, Arias filed a notice of appeal.   Dkt. No. 240.   On February 6, 2009, the Government filed a motion for summary disposition.   *See* Court of Appeals Case No. 08-1723.   On April 16, 2009, the Court of Appeals granted the Government's motion for summary disposition and affirmed the convictions and sentence of the District Court.   Dkt. No. 289.

After filing an initial section 2255 motion to vacate in 2010, Arias filed more than thirty supplements to her motion that were "not authorized by the court . . . disjointed . . . [and] unclear."  Dkt. No. 373 at 1.   The Court issued an Order in December 2013 instructing Arias to file a new section 2255 petition that would supersede all of her previous filings.   Dkt. No. 373 at 3.   Arias filed her renewed motion on February 11, 2014.   Dkt. No. 383.

In her motion, Arias alleges ineffective assistance of counsel on thirteen distinct grounds—all of which lack merit.   She alleges that Espinosa was ineffective for failing to do all of the following: 1) investigate the veracity of Arias' purported passport alibi, 2) call witnesses supporting this alibi and attempt to discredit testimony of Government witnesses, 3) investigate Arias' purported domestic abuse evidence and object to the Government's characterization of it as contrived, 4) pursue Onitxa Mercado as an exculpatory witness, 5) raise allegations of juror misconduct, 6) raise *Brady* claims against the prosecution, 7) communicate with Arias generally and about her pre-sentencing report in particular, 8) appeal the Court's decision denying Arias a psychiatric evaluation, and 9) raise objections both to the admission of her prior convictions and to the lack of jury instructions on eyewitness identifications.   Dkt. No. 383 *passim*.   In

3

addition, Arias alleges that 10) Espinosa was disbarred in 2012 and withheld from her a disbarment in the 1990s, and that 11) he faced a conflict of interest because he was retained and paid by her boyfriend.   *Id.*   Finally, Arias claims that 12) she lacked access to legal research materials, and that 13) the Supreme Court's decision in *Alleyne* necessitates a reversal of her sentence.   *Id.*   Arias' claims, individually and together, provide neither factual nor legal bases for a finding of ineffective assistance of counsel.

## **LEGAL ANALYSIS**

### I.     **Section 2255 Standards**

28 U.S.C. § 2255 establishes four narrow grounds upon which a petitioner may seek collateral relief: "'(1) that the federal sentence was imposed in violation of the constitution or laws of the United States; (2) that the court was without jurisdiction to impose such a sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack.'"   *Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994) (quoting *Hill v. United States*, 368 U.S. 424, 426-27 (1962)).   "The burden is on the petitioner to make out a case for section 2255 relief."   *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998).   The purpose of 2255 petitions is in part to have the same judge who presided over the trial revisit issues originally raised there.   *Farrow v. United States*, 580 F.2d 1339, 1349 (2d Cir. 1978) (citing *Mirra v. United States*, 379 F.2d 782, 788 (2d Cir. 1967)).   A judge may rely on the record as well as "his memory [and] . . . personal knowledge in situations where the record does not reflect one way or another whether a defendant's allegations have any validity." *United States v. Scully*, 798 F.2d 411 (10th Cir. 1986).   *See also United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).

In constructing a section 2255 petition, a petitioner must do more than merely state the grounds for relief; a section 2255 motion must also "state the facts supporting each ground" for relief requested.   Rule 2(b), Rules Governing Section 2255 Proceedings for District Courts. *See* 6 *Orfield's Criminal Procedure Under the Federal Rules*, Appendix C: "Rules Governing Section 2255 Proceedings" (2d ed. 1985, rev. ed. 2014).   Though an adequate motion may warrant an evidentiary hearing, a petitioner must offer more than "gauzy generalities," *David*, 134 F.3d at 478; a motion is not adequate if its proffered claims are "vague, conclusory, or palpably incredible," *id.* (quoting *Machibroda v. United States*, 368 U.S. 487, 514 (1962)).   *See also United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993) ("[T]he court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets").

In *David*, for instance, the petitioner alleged on a section 2255 motion claiming ineffective assistance of trial counsel that he (the petitioner) learned "at some indeterminate time" that the government had offered a favorable plea agreement but withdrew it before it was ever communicated to him by his attorney.   *David*, 134 F.3d at 477.   The petitioner offered "no specifics, e.g., who made the proposal, when it was tendered, what conditions were attached to it, why it was withdrawn, or how the petitioner came to hear of it."   *Id.*   The First Circuit affirmed the denial of the section 2255 petition on grounds that the petitioner "offered the district court no names, dates, places, or other details, even though such details presumably were within his ken," and further noted that "the lower court justifiably treated the petitioner's conclusory averments as mere buzznacking."   *Id.* at 478.

## II.     Ineffective Assistance of Counsel Standards

The Supreme Court has recognized that the Sixth Amendment right to counsel in criminal cases entails the right to "effective assistance" of counsel.    *McMann v. Richardson*, 397 U.S. 759, 771 (1970).[2]    Acknowledging the temptation "for a defendant to second-guess counsel's assistance after conviction or an adverse sentence," *Strickland v. Washington*, 466 U.S. 668, 669 (1984), the Court has made it clear that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To overcome this presumption, a petitioner must demonstrate *both* (1) deficient performance, i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *and* (2) a prejudicial outcome, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Id.* at 687.    The inquiry ends "if the court determines that the defendant does not satisfy either part" of this two-pronged test.    *Janosky v. St. Amand*, 594 F.3d 39, 45 (1st Cir. 2010) (citing *Strickland*, 466 U.S. at 697).

To test the performance prong, courts do not apply a bright-line rule, but rather evaluate whether counsel acted "reasonabl[y] under prevailing professional norms."    *Strickland*, 466 U.S. at 688; *accord United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir. 1978) (following other circuits in adopting a "reasonably competent assistance" standard, by which "counsel's representation should be within the range of competence expected of attorneys in criminal

---

[2] It is unclear whether Arias' claims concerning Espinosa's communications with her about his disbarment record apply only to the time he served as her counsel-of-choice or also to his actions as standby counsel.    It should be noted, however, that while courts may appoint standby counsel to assist a *pro se* litigant, the First Circuit has emphasized that there is no constitutional right to standby counsel.   *United States v. Bova*, 350 F.3d 224, 226 (1st Cir. 2003).   Not to place too fine a point on the matter, but without a right to standby counsel Arias arguably would not have grounds to raise claims that Espinosa was ineffective as such.   *See Wainwright v. Torna*, 455 U.S. 586 (1982).

cases").    Consequently, a petitioner can show deficient performance "only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it.'"    *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006) (quoting *Strickland*, 466 U.S. at 693-94).    The standard is applied based on "what the lawyer knew, or should have known, at the time his tactical choices were made and implemented."    *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991).    Indeed, the Supreme Court has declared that "strategic choices made after thorough investigation of law and facts relevant to plausible opinions are virtually unchallengeable."    *Strickland*, 466 U.S. at 690.

Even if a showing of deficient performance can be made, a petitioner cannot win a claim of ineffective assistance of counsel without also showing that her lawyer's performance resulted in a prejudicial outcome.    To establish prejudice, a petitioner bears the burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    The outcome, however, must be one to which the defendant was entitled in the first place.    *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) ("Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him").

The Supreme Court applied this standard in *Knowles v. Mirzayance*, 556 U.S. 111 (2009), upholding a state court's finding that the defendant's counsel was not ineffective for encouraging the defendant to abandon an insanity defense in the second phase (sentencing) of a bifurcated trial.    The defendant, who confessed to fatally stabbing and shooting his cousin, was convicted of first-degree murder during the guilt phase despite offering evidence that he was insane. *Knowles*, 556 U.S. at 114.    Applying *Strickland*, the Court ruled that the attorney's recommendation did not fall below an objective standard of reasonableness, *id.* at 113, ruling

7

that "[t]he law does not require counsel to raise every available nonfrivolous defense." *Id.* at 127.
The Court reasoned that beyond failing to meet the performance prong, the defendant could not
show prejudice in the sentencing phase since the jury had already rejected his insanity defense in
the guilt phase.   *Id.* at 128.

## ARGUMENT

### I.      Several of Arias' Claims Are Conclusory and Should Be Dismissed Outright

At least five of Arias' ineffectiveness claims are merely conclusory and do not warrant
consideration by the Court based on the minimum standards for a section 2255 petition.   First,
Arias claims that in failing to investigate whether her alibi was "factual," Espinosa "didnt [*sic*]
bother to call witnesses to the stand that could have corroborated [*sic*] her statements to him, and
refute testimony of governmental witnesses."   Dkt. No. 383 at 4.   No specific details are
offered, however, leaving it unclear which statements Arias is talking about, which potential
witnesses she is referring to, or even which part of the trial is at issue.   Second, Arias alleges
that Espinosa being retained by her ex-boyfriend was "[a]n obvious conflict of interest," Dkt.
No. 383 at 4, but again provides no details supporting this conclusion.   Third, Arias claims in a
handwritten note inserted into her motion that Espinosa "failed to appeal the courts [*sic*] decision
on denying Petitioner request for a psychiatrist evaluation."[3] Dkt. No. 383 at 10.   This
allegation, however, comes with no other details or legal arguments as to why the Court's
decision should have been appealed.[4]   Moreover, Arias was represented on appeal by Attorney

---

[3] Petitioner ends this complaint by pointing to a case either called "*Williams v. Branker*" or "*Williams v. Brenker*" (it
is unclear from the handwriting which one), without including any reporter or other citation information.   Dkt.
No. 383 at 10.   No case in any jurisdiction could be located under either name.

[4] It should also be noted that the Court did thoroughly address Arias' request for a psychiatric evaluation on the first
day of trial.   *See* Dkt. No. 268 at 4-8.

James M. Fox, not Espinosa.     *See*, Court of Appeals Case No. 08-1723. App. Doc.

No. 001188042    Fourth, also handwritten onto the end of her motion, Arias claims that she was

"deprived of having access to any legal research, Deprived of being Prepared for Defense at trial

by being Place [*sic*] under extreme unusual and Cruel punishment."    Dkt. No. 383 at 10.

Again, no details are furnished even though Arias presumably had at her disposal the necessary

information to flesh out this complaint.    And fifth, Arias argues that the Supreme Court's

decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which held that any fact increasing a

defendant's mandatory minimum sentence must be proved beyond a reasonable doubt, renders

her enhancements unconstitutional.    Dkt. No. 383 at 9-10.    Her argument, however, included

nothing more than a summary of the case, a restatement of the beyond-a-reasonable-doubt

standard, and the conclusion that "[u]nder this holding, petitioner's enhancements, [*sic*] must be

removed, as they are unconstitutional."    *Id.* at 10.    Moreover, the Court did not sentence Arias

according to a mandatory minimum, but rather based on an assessment of the sentencing

guidelines in light of aggravating factors that warranted enhancements.[5]    Dkt. No. 260 at

116-117.    Because they lack any of the requisite details articulated in *David*, each of these

claims fails to meet the minimum standard for pleading section 2255 complaints and should be

dismissed.

## II.    Arias Cannot Show a *Strickland* Violation for Any of Her Specific Claims of Ineffectiveness

None of the various allegations Arias makes in her petition can support a finding of

ineffective assistance of counsel by Espinosa.    A large portion of her factual allegations are

---

[5] Chief Judge Wolf did sentence Arias according to an upward departure from the guidelines' recommended sentence. In explaining the departure, Wolf stated that, "This is a case that involved absolutely pervasive intentionally false testimony on important issues by Miss Arias at trial.    I've been a judge for 23 years.    I cannot remember another case with such pervasive and blatant perjury and other misconduct."    Dkt. No. 284 at 89.

without merit, and her claims are especially suspect in light of the Court's findings that Arias "repeatedly told [the Court] she was fully satisfied" with Espinosa's counsel throughout her trial. Dkt. No. 282 at 15.   But even considered in the most favorable light possible, none of her claims stand up to legal or factual scrutiny.

A.      **Espinosa Acted Reasonably Regarding Arias' Claimed Alibi**

Arias faults Espinosa's handling of her claimed alibi, *viz.*, that she was in the Dominican Republic for two weeks in December 2003, during a period when several of the charged offenses occurred.   Arias Motion at 4-5.   Her motion claims that Espinosa's failure to follow up with information she provided him violated her rights to Due Process and a fair trial.   Both factually and legally, Arias entirely fails to present either a viable performance or a prejudice argument.

When Arias appealed her convictions and sentences, the Government filed a Motion For Summary Disposition.   *See* Ct. App. No. 08-1723, 2/6/2009.   The Government summarized the pertinent evidence in its Motion For Summary Disposition at 3-5, with citations to the trial record:[6]

> The trial evidence proved that Arias, alone and in concert with her co-defendant, had been engaged in: stealing mail from residential mailboxes [*see, e.g.*, 11/27/07:88-93, 123-127; 11/28/07:104-110, 118-121; 11/29/07:84-100, 104-109; 11/30/07:9, 11-19, 84-91, 96-101, 105-110]; using stolen identification data to open bank accounts and obtain false identification materials [*see, e.g.*, 11/27/07:9-10, 47-51, 56-57, 125-127; 11/28/07:13-19; 11/30/07:54-68, 113-124]; obtaining a car loan and credit cards under stolen identification [*see, e.g.*, 11/27/07:128-136; 11/28/07:50-59; 11/29/07:12-20; 11/30/07:100-101]; altering stolen checks to obtain funds [*see, e.g.*, 11/27/07:123-125; 11/28/07:104-110, 118-121; 11/29/07:84-100, 104-109; 11/30/07:26-53]; using credit card "courtesy" checks stolen from the mails to make fraudulent deposits to bank accounts and payments to merchants [*see, e.g.*, 11/28/07:126-133; 11/29/07:32-38; 11/30/07:12-19, 84-91, 96-101, 105-110]; and obtaining federal housing benefits under false pretenses [*see, e.g.*, 12/3/07:22-29, 32-38, 46-62, 66-74, 81-85].   The government also presented surveillance photos of Arias cashing fraudulent checks at banks and making purchases using fraudulent credit cards

---

6 Citation to the transcripts from the trial and sentencing hearings are to the date of the hearing and the relevant page: for example, "[11/27/07: 88-93]" refers to pages 88-93 of the trial transcript dated November 27, 2007.

[*see, e.g.*, 11/26/07:102-105, 107-110, 124; 11/27/07:11, 14-16, 65-66; 11/28/07:76-79, 92-99; 11/30/07:51-53], and fingerprint evidence establishing that Arias's fingerprints were on some of the stolen and altered checks [*see, e.g.*, 11/27/07:105, 112-117].

Arias testified in her defense, denying all responsibility for committing the charged crimes, blaming her co-defendant and others for the fraud, and asserting that she had been out of the country for two weeks in December 2003 when many of the fraudulent activities occurred. [*See* 12/3/07:126-153; 12/5/07:9-97]. Among other denials of her responsibility, Arias testified that, despite evidence to the contrary, it was not her in the bank and merchant surveillance photos [*see, e.g.*, 12/5/07:13-14, 25-26, 49-50, 60-61, 75-76]; that her fingerprint on one of the fraudulent checks could be explained by her handling of the check at an interview with local police in January 2004 [12/3/07:143-144; 12/5/07:11-16]; and that her passport, which contained stamps allegedly confirming her travel to the Dominican Republic, proved that she was not present in the United States during the relevant time [12/6/07:12-15].

In rebuttal, a supervisor from Citizens' Bank testified that the check that Arias claimed to have handled for the first time during her interview with local police on January 10, 2004, was still in circulation at that time and was not presented to federal law enforcement agents until September 2004. [12/6/07:40-42]. In response to Arias's claim that she was in the Dominican Republic for two weeks in December 2003, a United States Customs and Border Patrol supervisor testified that the official Treasury Enforcement Communication System database contained no record of Arias's entry or exit from the United States in December 2003 using the passport containing the allegedly official Dominican Republic stamps. [12/6/07:49-70]. Additionally, Arias's prior employer testified that his company's personnel records showed that Arias had submitted time sheets and been paid for work completed during those two weeks in December 2003. [12/6/07:81-88].

Arias fails to note in her motion that she was permitted to fully present her alibi defense at trial. *See*, Dkt. No. 277 [12/6/07: 12–34]. *See also* Exhibit 171 (passport). The jury simply did not believe her in the face of overwhelming evidence from the Government's case-in-chief and, even more so, in light of the powerful rebuttal evidence presented after she testified.

In all events, Espinosa acted reasonably as counsel for Arias in this regard. First, he acted entirely reasonably in initially deciding that he would not seek to introduce the passport as alibi evidence for Arias. Espinosa maintains that Arias' previous attorney, John Moss, discussed the case with him before handing it off, and Espinosa states that he agreed with Moss's assessment

that the passport stamps appeared illegitimate and would not constitute reliable support for a valid alibi.   Dkt. No. 395 ¶¶ 65-66.[7]   After diligently considering his options, Espinosa made a reasonable initial decision regarding trial evidence.   *Strickland*, 466 U.S. at 690; *Bosch*, 584 F.2d 1121.

When Arias pressed the matter during trial, Espinosa disclosed the passport to the Government and the Court during Arias' trial testimony, advising that he had never previously seen the document.   In fact, Arias testified, outside the presence of the jury, that she had never before discussed the passport with Espinosa. *See* Dkt. No. 276 [12/5/07: 110].   The defendant further testified, outside the presence of the jury, that she had specifically used the passport to fly from Boston-to-Miami-to Dominican Republic and had returned by way of Dominican Republic-to-Miami-to-Boston.   *Id.*, [12/5/07: 113, 115, 118-19].

The next day, Arias testified before the jury that she had been in the Dominican Republic from December 4, 2003 to December 20, 2003.   *See* Dkt. No. 277, [12/6/07: 13–14].   She reiterated her claims that she had traveled on the passport, Exhibit 171, from Boston through Miami to the Dominican Republic and that her return flight from the Dominican Republic was through Miami to Boston.   See Dkt. No. 277, [12/6/07: 18 – 20].   She displayed two stamps purportedly reflecting her entrance and exit from the Dominican Republic.

---

7    Attorney John Moss testified before this Court on October 10, 2008.   Dkt. No. 284, [10/10/08: 39-53].   Arias stated that she waived her attorney-client privilege regarding Mr. Moss.   *Id* at 42.   However, Arias was acting *pro se* at the time, albeit with Attorney Espinosa as standby counsel.   For that reason, in its questioning of Mr. Moss the Government took pains to avoid inquiring into potential attorney-client conversations.   Nonetheless, Mr. Moss' testimony made clear that he had made the same initial decision that he would probably not use the passport as evidence at trial.   *Id.* at 50.   Mr. Moss noted that it might have been an ethical conflict for him to offer the passport at trial.   *Id.*   In response to questioning by Arias, Mr. Moss specifically stated:   "Frankly, I didn't expect to use the passport in the trial . . . [i]n either trial.   I hadn't made that decision.   But by the time I was relieved, I did not expect to use it."   *Id.* at 51.

As set out above, Arias' testimony regarding her travels was entirely disproven in three ways.   First, when confronted with a security camera photograph showing Arias with her two children cashing a victim's check at the Lynn Wal-Mart during the subject period in December, she claimed it was not her in the photograph.   [12/6/07: 22].   But Lieutenant Reddy of the Lynn Police Department, who had personally dealt extensively with Arias over a considerable period of time, had testified that the woman in the photograph was unmistakably her.   Dkt.269 at 106.[8]   Second, the rebuttal testimony of CBP Supervisor Linda Brown regarding the TECS records established that Arias almost certainly did not *leave* the U.S. under the subject passport and absolutely did not *return* to the U.S. under that passport.[9]   Third, the rebuttal testimony of her former employer confirmed that Arias was employed as a bus driver and was paid for working during the period she claimed to be out of the country.

Notwithstanding her failure using obvious perjury at trial, Arias subsequently compounded her obstruction of justice on May 12, 2011, when she filed a motion to supplement the record.   Dkt. No. 311.   Appended to her motion was a purported "To Whom It May Concern" statement, purportedly from the Dominican Republic Department of Immigration, purportedly declaring that "Esther Angelica Arias" entered that country on December 4, 2003 and departed that country on December 20, 2003. Dkt. No. 311-1.   Whatever reliability may/may not be placed upon this submission in light of the repeated instances of fabricated documents and testimony presented by Arias, her proffered exculpatory evidence is entirely disproved in two new ways.   First, the "To Whom It May Concern" statement declares that

---

8 In his Affidavit, Espinosa reported that Arias had told him that if presented with the photo evidence at trial "she would testify that the photograph was of a non-existing half-sister."   Dkt. No. 395, ¶  70.

9 Brown emphasized that the TECS database searches by passport number, not the traveler's name, and thus would have turned up results for Arias' passport even if it were used under a different name.

Arias flew from New York to Santo Domingo, D.R. on a specific American Airlines flight and from Santo Domingo to New York on a specific American Airlines flight.    This information directly contradicts Arias' own testimony over two days when she repeatedly stated under oath that she traveled from Boston-to-Miami-to-Dominican Republic and precisely reversed that route for her return.    *See*, *supra*.    Second, an Affidavit from Michael P. Manning, Supervisory Officer with the U.S. Customs and Border Protection (CBP) Department of Homeland Security states that CBP maintains an Automated Targeting System (ATS) that screens inbound and outbound travelers, and also maintains Passenger Name Record (PNR) data regarding air passengers seeking to book travel to/from the U.S.    *See*, Exhibit A, attached.    The CBP Affidavit   makes clear that Arias did not travel to/from the U.S. on the dates or on either American Airlines flight she now claims.    Moreover, it remains that the CBP testimony at trial still stands, that is, Arias did not travel from/to the U.S. under her passport as she claims.

Arias' complaints about Espinosa regarding her bogus alibi defense cannot factually support a claim of ineffective assistance.    Nor did Espinosa have a legal obligation to pursue every potentially available "nonfrivolous" defense, *Knowles*, 556 U.S. at 127, much less a frivolous defense.    Moreover, Arias was never entitled to an acquittal based on fraudulent evidence, thus her complaint provides her no grounds for a claim of ineffectiveness for failing to more aggressively pursue it.    *See Lockhart*, 506 U.S. at 372.    Arias simply cannot show a reasonable probability that she would have obtained a different outcome to which she was entitled had Espinosa made further inquiries into her claim of alibi.

**B.  Espinosa Acted Reasonably Regarding Arias' Purported HUD Defense**

Arias also proffers a vague allegation that Espinosa failed to investigate her alibi that she only held two apartments in her name at the same time in order to escape a domestic abuse

14

situation.   Dkt. No. 383 at 4.   Arias claims that Espinosa did not "follow[] up with HUD, or the Domestic Violence agency," which "would have proven fraud was not intended."   *Id.*   In addition, she contends that Espinosa should have objected to the Government's closing argument in which the prosecution argued that she had fabricated the domestic abuse excuse.   *Id.* at 10. Espinosa, however, maintains that Arias never brought up domestic abuse as a substantive defense "until very late in the trial before Judge Wolf," and never provided him with evidence or names of witnesses that could support this claim.   Dkt. No. 395 ¶¶ 55-57.   Arias claims Espinosa would have found evidence of domestic abuse merely by combing through her HUD documents.   Dkt. No. 383 at 4.   But Espinosa contends that he reviewed all of her discovery from HUD and investigative agencies and "never saw any documents making reference to the consent and approval of more than one apartment because of domestic abuse or any other reason."   Dkt. No. 395 ¶ 59.

Because Arias fails to establish a factual record, she cannot make a showing that Espinosa performed deficiently.   An attorney need not pursue a line of defense he has no reason to suspect is available or with no evidence at his disposal to substantiate it.   *See Knowles*, 556 U.S. at 127.   Nothing beyond Arias' own unsupported assertions substantiates her argument. Since she never raised domestic abuse as a potential defense, Espinosa did not behave unreasonably in failing to pursue it or in failing to object to the Government's suggestion that it was fabricated, and thus did not violate the performance prong of *Strickland*.   Nor does she present any basis for showing that evidence of abuse would have altered the outcome of her case.

### C.  Espinosa Acted Reasonably Regarding Onitxa Mercado

Arias claims that she "gave defense counsel information on Onitxa Mercado," and that Espinosa failed to pursue this information despite Mercado's status as a potentially exculpatory

witness. Dkt. No. 383 at 5.    Espinosa, however, declares that Arias never provided him with

Mercado's name or any information about her as a possible witness.    Dkt. No. 395 ¶ 77.

Were her version of the facts to be somehow credited, Arias still would have no valid

*Strickland* claim against Espinosa.    Even at this late date, Arias fails to inform this Court of any

exculpatory testimony Mercado could have provided.    Though Arias claims a performance

violation insofar as Espinosa groundlessly neglected to follow up on her information about

Mercado in the first place, Arias cannot show a reasonable probability that Espinosa's failure in

this regard led to an unfavorable outcome.    The evidence against Arias at trial was

overwhelming.    Moreover, even if Espinosa had acted as Arias' claims he should have, it is

unclear whether Espinosa could have located Mercado, that she would have testified, or that she

would have provided testimony of some nature Arias may have in mind.    There is thus no

reasonable probability of a more favorable outcome to Arias.

### D.  Espinosa Acted Reasonably Regarding Juror Discussion

Next, Arias contends that Espinosa was ineffective for failing to "move[] for exclusion of

the jury pool during the presentation of irrelevant and prejudicial information"[10] or "request[] a

mistrial" after a juror notified the judge of "misconduct amongst the jurors."    Dkt. No. 383 at 7.

This apparently refers to the eleventh day of the trial, when the judge received a note from Juror

Number 6 alleging that there had been "some talk among the jurors in U.S. v. Arias [*sic*] about

the trial, during our break," and asking to be instructed by the Court "in more explicit terms, how

much discussion is permitted before deliberations begin."    Dkt. No. 273 at 5.    This Court

suggested to both prosecution and defense counsel, without the jury present, that he could

---

[10]  Though this is precisely how Arias words the claim in her petition, it is entirely devoid of any description of
purportedly "irrelevant and prejudicial information."

reiterate to the jury that they may not discuss the case until deliberation begins, and explained

that he would not specifically mention to the jury that he received a note lest it "create an

unfortunate dynamic in the jury deliberations."   *Id.* at 6.   When asked whether this seemed

appropriate, the Government asked whether the Court might want to ask the jury if there have

been any "discussions which would impact anybody's verdict in the case."   *Id.*   But Espinosa

opposed such an inquiry on grounds that he felt it would "bring[] more danger than benefit," and

suggested the judge instead simply instruct the jury to ignore any discussion of the case that

might have occurred.   *Id.* at 7.   This Court agreed with Espinosa's cautionary suggestion and

instructed the jury accordingly.   *Id.* at 9-10.

Arias can show neither a performance violation nor prejudice in this instance.   Espinosa

acted reasonably in suggesting that the Court limit its inquiry, proposing instead an instruction to

disregard any pre-deliberation discussion that may have occurred.   Espinosa offered a strategic

and objectively reasonable response for avoiding an inquiry into what the jurors may have

discussed whereas initiating a larger inquiry might have poisoned the dynamic of the jury, and a

curative instruction would suffice to resolve the issue.   Furthermore, Espinosa did not have an

obligation to raise every issue possible.   *See Knowles*, 556 U.S. at 127.   It was reasonable and

within the scope of good professional judgment to conclude he ought not to test the Court's

patience with a mistrial motion given the ameliorative power of jury instructions.

Even if there had been a performance violation, Arias cannot show prejudice as a result

of Espinosa's actions.   Neither Juror 6 nor anyone else raised subsequent concerns during the

trial or indicated that any discussion that may have taken place earlier improperly influenced

deliberations.   Even if Espinosa had moved for a mistrial, the motion almost certainly would

have been denied where this Court gave the jury specific instructions to cure any potential for

jeopardy to jury deliberations.   There exists no reasonable probability that a different result

would have obtained had Espinosa sought a mistrial.[11]

### E.  None of the Alleged *Brady* Materials Were Exculpatory.

Arias also alleges ineffectiveness on grounds that Espinosa failed to raise purported

*Brady* violations by the Government.   Dkt. No. 383 at 7-8.   She claims that the Government

did not turn over her "original Boston Housing Authority [*sic*] application and paperwork, which

would have proved a pattern of domestic violence," among other things.   *Id.* at 8.   She further

alleges that the Government failed to disclose "records of housing interviews with Cintron (the

name) when the defendant was incarcerated in state jail," *id.*, though she does not establish the

existence of such interviews nor explain the supposed contents of such interviews nor how they

would have materially changed her case.   What was established at trial is that Arias herself

sometimes claimed the identity of Jannette Cintron to fraudulently obtain HUD housing

benefits.[12]   Arias was also examined at trial regarding her directing Gladys Cabrera to appear at

a housing authority meeting as "Jannette Cintron."   Her assertion of ineffectiveness rests on

Espinosa's purported failure either to raise these two *Brady* claims on direct appeal or to

"submit[] motions to the [j]udge to declare on record the prosecutorial misconduct," to the effect

of causing her to procedurally default on the claims.   *Id.*

The Government, however, made full disclosure of all materials in its possession and

reports of interviews of trial witnesses.   Arias fails to show that non-disclosed materials exist as

---

[11] Arias also points to *United States v. Boone*, 458 F.3d 321 (3d Cir. 2006), in which the Third Circuit held that a district court "may, within its sound discretion," investigate allegations of juror misconduct when there is "substantial evidence" that it has occurred.   *Boone*, 458 F.3d at 329.   But Arias does not elaborate on what she intends to be drawn from this.   Even if the First Circuit were bound to the holding in *Boone*, the Court here would not have erred in declining to do something it was permitted—but in no sense required—to do.

12 Jannette Cintron also was a victim of stolen identity in connection with four counts for which Arias was convicted in Criminal No. 06-10092-DPW, the case tried before Judge Woodlock.

she claims.    Nor does she hint at how such materials, if any, would have been favorable to her.

But even if all of Arias' factual assertions were correct, neither of these claims gets off the

ground.

Her claim regarding the interviews with Cintron does not specify the contents of the

purported interviews or what about them would have been favorable to her case, failing to

constitute even a prima facie showing that the evidence was favorable—let alone prejudicial to

exclude.    As for her Boston Housing Authority paperwork, even if the Government had indeed

withheld such material, and even if it contained potentially favorable information regarding

domestic violence, Arias cannot show a violation of what the First Circuit has called the "*Brady*

error rule," which would require a negative answer to the question of whether "the trial, in the

absence of the undisclosed evidence, resulted in a verdict 'worthy of confidence.'"    *United*

*States v. Maldonado-Rivera*, 489 F.3d 60, 66 (1st Cir. 2007) (quoting *United States v.*

*Gonzalez-Gonzalez*, 258 F.3d 16, 20 (1st Cir. 2001)) (citation omitted).    The evidence against

Arias was simply overwhelming.

To the extent Arias' claim relates to Espinosa's performance at trial, he did not act

unreasonably in connection with the Government's discovery.    To the extent the complaint is

that discovery issues could have been raised on direct appeal, her attorney on appeal was James

Fox, not Espinosa.    But in either event, it remains that where there was no error at the trial,

there were no grounds for appeal on this basis.

### F.  Espinosa Acted Reasonably Regarding Both Arias' Prior Convictions and the Eyewitness Identification Testimony

Arias claims Espinosa was ineffective for failing to raise a number of objections at trial.

First, she claims that the prosecution introduced a prior conviction erroneously attributed to her

(though she does not state which alleged conviction she is referring to), prejudicial juvenile history, and prejudicial charges against her that were subsequently dismissed (again, without specifying which ones she is referring to), all of this without any objection from Espinosa.[13] Dkt. No. 383 at 6.   Espinosa, however, contends that he and Arias reviewed her prior record before trial, and that at her behest he filed a motion to exclude those elements of her record she felt would be prejudicial.   Dkt. No. 395 ¶¶ 84-86.   He notes that this Court ruled on the motion rendering a proper *in limine* ruling regarding the admissibility of prior convictions, and in his affidavit, Espinosa acknowledges that those portions of Arias' record admitted at trial were fully admissible under the Federal Rules of Evidence.   *Id.* ¶ 88.

The record verifies that Espinosa did indeed file a motion on November 16, 2007, to suppress Arias' prior convictions for kidnapping, receiving stolen property, making threats, and larceny.   Dkt. No. 155.   The Court then instructed the jury as to the limited admissibility of evidence in opening instructions, Dkt. No. 269 at 19, instructed the jury mid-trial that several past convictions (for conspiracy, false and fraudulent statements, forgery, and credit card fraud) must only be used to assess Arias' credibility in court, Dkt. No. 256 at 73, reiterated this instruction subsequently, Dkt. No. 275 at 131, and reminded the jury one last time prior to deliberation that past convictions could not be used as evidence of propensity to commit crimes, Dkt. No. 278 at 80-81.   Plainly, Arias' assertions in her renewed petition have no basis in fact. Prior convictions that could unfairly prejudice the jury against her were excluded *in limine* upon Espinosa's motion, and those introduced in the course of the trial were fully admissible under the rules of evidence with numerous jury instructions to ensure their appropriate use.

---

[13] Though she makes the allegation in her brief, no mention was made of her juvenile history at trial.

Second, Arias alleges ineffectiveness on grounds that Espinosa failed to object to this Court's decision not to issue jury instructions on the accuracy of eyewitness identification. *Id.* at 7.   Espinosa contends that the cautionary jury instruction sought by Arias was needless, given that Lieutenant Reddy of the Lynn Police Department, brought in to identify Arias as the woman in various photographs and still-frames, was both experienced at making identifications and highly familiar with Arias herself. *Id.* at 89.   Considered from the time he made it, Espinosa's decision at trial not to object to the Court's ruling was patently reasonable given his assessment of the situation.   Espinosa determined Lieutenant Reddy to be competent at identifying Arias, and any reasonable attorney in the same situation could have also chosen not to object to the Court's decision.

Moreover, the Court actually did issue an instruction as to eyewitness identifications during the Charge to the Jury at the end of the trial; this Court reminded the jurors that "[w]hen a witness gives identification testimony . . . you must first decide whether the witness is telling the truth as he or she understands it, but you must do more than that, you must also decide how accurate the identification was." Dkt. No. 278 at 78.   Given these facts, and the reasonableness of Espinosa's professional judgment that additional jury instructions were not necessary, Arias cannot meet the performance prong of *Strickland*'s two-part test.   Even if she could, however, she could not satisfy the prejudice prong.   Introducing an admissible prior offense and declining to give additional cautionary eye witness jury instructions, even taken together, would not have turned the tables in her case given the overwhelming evidence against her.

### G.  Espinosa Was Rebuffed by Arias Despite His Diligent Efforts to Communicate with Her

Arias claims that Espinosa was ineffective in failing to communicate with her throughout the proceedings.    She makes the sweeping allegation that "not at any time was defendant kept abreast of what was going on her case."    Dkt. No. 383 at 5-6.    In particular, Arias avers that Espinosa failed to discuss with her the pre-sentencing report (PSR) issued following her conviction, and that he did not object to any of the report's findings despite what she calls "preposterous reasons" behind the enhancements issued.    Dkt. No. 383 at 8.

Espinosa, however, contends that from his second meeting with Arias until she dismissed him as her counsel, he visited her "no less than three times per week to prepare for her case." Dkt. No. 395 ¶ 34.    According to Espinosa, Arias refused to meet with him before her sentencing hearing despite his repeated attempts to visit her in jail to discuss the PSR.    Dkt. No. 395 ¶ 99.    After being appointed as standby counsel, Espinosa maintains that despite making "at least three efforts" to visit her at the Bristol House of Corrections, she would not speak with him about the PSR or anything else.    *Id.* ¶¶ 104-106.    Since he was no longer her counsel of choice, Espinosa states he was in no place to object to the PSR on her behalf—but adds that in any event he saw nothing in the PSR that was patently objectionable.    *Id.* ¶ 107.

An examination of the record reveals that Arias' claims are flatly contradicted by the facts.    In an order issued on April 4, 2008, eighteen days after Espinosa moved to withdraw as counsel, this Court reiterated Espinosa's report that Arias refused to speak with him at all, let alone about the PSR, despite his repeated attempts to visit her in the Bristol House of Corrections.    Dkt. No. 229 at 2-3.    The same order reveals that Arias even refused to accept a copy of her PSR from the Chief Probation Officer who had been assigned to deliver it to her.

*Id.*   Arias' claims regarding the PSR ignore the fact that she actively prevented Espinosa from meeting with her despite his repeated efforts to do so.

Furthermore, her broader claim that Espinosa never kept her informed about her case is at best vague and untenable and at worst outright false.   As this Court noted, upon successive inquiry of Arias, she admitted throughout the trial that she was satisfied with Espinosa's counsel. *See*, *e.g.*, Dkt. No. 282 at 15.   There is simply nothing in the record to support a finding of deficient performance on Espinosa's part.   All of the accusations Arias levels against him are either untrue or resulted from her own efforts to stonewall Espinosa and delay the adjudication of her case.

### H.  Espinosa Was Authorized To Practice Law When He Represented Arias and His Disbarment On Unrelated Matters Had No Impact On Arias' Case

Arias asserts that "[u]nbeknownst to [her]"[14] Espinosa was disbarred from 1990-1997. Dkt. No. 383 at 2.   Espinosa, however, contends that he was not disbarred from 1990-1997, but merely resigned from the Massachusetts Bar effective December 1990 with no disciplinary hearings or any formal findings or recommendations of disbarment.   Dkt. No. 395 ¶ 5.[15]   He maintains he applied for reinstatement and was successfully reinstated in 1997.   *Id.* ¶ 6.

Espinosa's non-disclosure of his resignation from the Massachusetts Bar for the subject period before he represented Arias does not constitute a violation of *Strickland*'s performance prong, as it had no bearing on his performance as Arias' counsel.   Though minimal standards of

---

[14]  Presumably her claim is that Espinosa never told her this, and she only came to learn about it after her trial was over.

[15]  To be certain, Espinosa characterizes his removal from the bar as voluntary, but the judge in his 2012 disbarment proceedings noted that his 1991 resignation (Espinosa pegs it to December 1990) admitted various instances of misconduct including neglect and misrepresentation to clients, as well as misuse of personal funds.   *See* http://www.mass.gov/obcbbo/bd12-072.pdf.

professional conduct may call for certain kinds of disclosures (potential conflicts of interest, current disciplinary sanctions, etc.), the fact that Espinosa left the Massachusetts Bar for seven years and was fully reinstated in 1997, ending more than a decade before he began representing her, in no way affected Arias' case.   Nor does Arias specify any claim that it did.

Arias, however, now alleges that Espinosa was "disbarred for live [*sic*]" as of 2012. Dkt. No. 383 at 2.   Espinosa does confirm in his affidavit that he was disbarred from the Massachusetts Bar effective November 13, 2012, but points out that he was not disbarred for life and is entitled to seek readmission after eight years.   Dkt. No. 395 ¶ 7.   Arias never specifies how this affected her case in 2006-08.

Regardless of its terms, Espinosa's 2012 disbarment is not relevant to any of Arias' claims, since it occurred after Espinosa had finished representing her and arose out of unrelated matters with other clients.[16]   Espinosa's performance did not fall below the minimum performance threshold set by *Strickland* and *Bosch*.   Moreover, Arias fails to show how any Espinosa disbarment prejudiced her case.

## CONCLUSION

For all the above reasons, this Court should deny defendant's section 2255 petition.

---

[16] Espinosa's disbarment apparently arose out of misrepresentations he allegedly made to other clients in immigration and divorce matters between 2006 and 2009.   *See* http://www.mass.gov/obcbbo/bd12-072.pdf.

Respectfully submitted this 15th day of July, 2014.

CARMEN M. ORTIZ
United States Attorney

By:   /s/ Victor A. Wild
VICTOR A. WILD
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, Victor A. Wild, Assistant U.S. Attorney, certify that this submission filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and by Certified Mail (return receipt) to Esther Arias, FCI Aliceville, Federal Correctional Institution, 11070 Highway 14, Aliceville, AL 35442,

 /s/ Victor A. Wild
VICTOR A. WILD
Assistant U.S. Attorney
Suite 900
One Courthouse Way
Boston, MA 02210