UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 06-10305-MLW |
| | ) | |
| ESTHER ARIAS, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                         March 31, 2015

I.   INTRODUCTION

On December 7, 2007, defendant Esther Arias was convicted of thirty-seven counts of Theft of Mail and Receipt of Stolen Mail, Mail Fraud, Identity Theft, Theft of Government Property, and Conspiracy. On April 22, 2008, she was sentenced to twelve years in prison and five years of supervised release, and was ordered to pay $105,602.33 in restitution by this court. Her conviction and sentence were summarily affirmed by the First Circuit. See Judgment (Docket No. 289).

Arias challenges her conviction and sentence pursuant to 28 U.S.C. §2255 on ineffective assistance of counsel, prosecutorial misconduct, trial by jury, and cruel and unusual punishment grounds. She has also moved for appointment of counsel and requested an evidentiary hearing. For the reasons explained in this Memorandum and Order, the §2255 Motion is being dismissed, and Arias's other motions are being denied.

## II.   BACKGROUND

### A.   Trial and Conviction

On September 27, 2006, Esther Arias and her alleged co-conspirator, Gladys Cabrera, were indicted on thirty-nine counts of conspiracy, mail fraud, bank fraud, theft of mail and government property, and identity theft (Docket No. 1).   On October 4, 2006, the magistrate judge appointed John P. Moss, Esq., to represent Arias (Docket No. 10).   On July 23, 2007, Arias retained Jose Espinosa, Esq., as her counsel (Docket No. 99).   The court granted Mr. Moss's motion to withdraw on August 2, 2007 (Docket No. 108).   On November 20, 2007, the court granted the government's motion to dismiss two of the counts against Arias (Docket No. 192).

Arias's jury trial on the remaining thirty-seven counts began on November 26, 2007 (Docket No. 163).[1]   The jury was presented with testimony regarding Arias's and Cabrera's conspiracy that involved: stealing mail, see, e.g., Nov. 27, 2007 Tr. at 87:13-94:8, 122:5-127:16; using stolen identification data to open bank accounts, see, e.g., id. at 47:10-50:7, 127:23-128:21; obtaining a car loan under stolen identification, see, e.g., id. at 128:22-133:24; Nov. 28, 2007 Tr. at 50:14-55:25; obtaining credit cards under stolen identification, see, e.g., Nov. 30, 2007 Tr. at 99:22-101:13;

---

[1] Cabrera pled guilty and was, therefore, not tried with Arias.

altering stolen checks to obtain funds, see, e.g., Nov. 29, 2007 Tr. at 84:21-89:24; using credit card "courtesy" checks stolen from the mails to make fraudulent deposits to bank accounts and payments to merchants, see, e.g., Nov. 30, 2007 Tr. at 11:17-20:7, 84:11-92:15; and obtaining federal housing benefits under false pretenses, see, e.g., Dec. 3, 2007 Tr. at 22:10-35:6; 49:2-52:21.    This testimony was corroborated by surveillance photographs of Arias cashing fraudulent checks and making purchases using fraudulent credit cards.    See, e.g., Nov. 26, 2007 Tr. at 102:6-105:7; Nov. 27, 2007 Tr. at 64:19-66:14.    It was further corroborated by fingerprint evidence establishing that Arias had handled some of the stolen checks.    See, e.g., Nov. 27, 2007 Tr. at 110:19-118:19.

Arias was the only witness to testify for the defense.    She denied any involvement in the alleged crimes and claimed that Cabrera was fully responsible.    See, e.g., Dec. 3, 2007 Tr. at 136:6-137:22.    She stated that she was in the Dominican Republic from December 4, 2003 until December 21, 2003, when many of the alleged crimes were committed.    See id. at 142:9-142:21.    Arias submitted her passport into evidence to corroborate her testimony.    See Dec. 6, 2007 Tr. at 12:4-14.    The passport contained what appeared to be an entry stamp to the Dominican Republic on December 4, 2003, and an exit stamp on December 21, 2003.    See id. at 12:23-14:25.    Arias testified that she was not

3

the woman cashing the fraudulent checks or using stolen credit cards in the photographs that the government presented. See Dec. 5, 2007 Tr. at 13:4-14:15, 20:5-26:23. She further testified that her fingerprints were on one of the fraudulent checks because she had handled the check while being interrogated by police. See Dec. 3, 2007 Tr. at 143:22-144:10.

The government called several witnesses in rebuttal. A United States Customs and Border Patrol ("USCBP") supervisor testified that there was no record of Arias leaving or entering the country in December 2003. See Dec. 6, 2007 Tr. at 53:15-70:20. He stated that if, as Arias claimed, she had flown to and from the Dominican Republic, her re-entry into the United States would be documented on USCBP records. See id. Arias's former employer testified that his company's payroll records showed that Arias was paid for working from December 4, 2003 through December 21, 2003. See id. at 81:9-88:12. This would have required her to sign her time sheets in person at the office during that time period. See id.. Additionally, a bank supervisor testified that the check that Arias claimed to have handled during her interrogation was not given to the police by the bank until several months after Arias was questioned. See Dec. 6, 2007 Tr. at 41:12-42:22.

On December 7, 2008, the jury found Arias guilty on all thirty-seven counts (Docket No. 188). Prior to sentencing,

4

Arias moved to replace her retained attorney, Mr. Espinosa, with court-appointed counsel (Docket No. 212).  The court denied her request, finding that it was made primarily to delay her sentencing (Docket No. 222).  Mr. Espinosa moved to withdraw as Arias's counsel because she was refusing to communicate with him (Docket No. 229).  The court granted Mr. Espinosa's motion, but appointed him to serve as Arias's Standby Counsel at sentencing (Docket No. 229).

On April 22, 2008, the court sentenced Arias to 144 months in prison, 60 months of supervised release, and ordered restitution in the amount of $105,602.33.  See April 22, 2008 Tr. at 111:10-112:12.  Her sentencing guideline range based solely on criminal history and the offenses of conviction was 84 to 105 months.  See id. at 87:14-18.  The court found that the criminal history category significantly understated her risk of recidivism.  See id. at 110:3-6.  The court enhanced the Total Offense Level because of Arias's repeated perjury and two independent acts of obstruction of justice: Arias had caused her attorney to introduce a falsified passport into evidence and had sent a forged letter to the court purporting to be from Cabrera.  See id. at 109:3-110:6.  See id. at 107:20-111:8.  This raised the guideline range for her sentence to 130 to 162 months.  See id. at 111:3-8.  The enhancement was appropriate because, as the court explained:

> This is a case where an upward departure,[2] based on
> multiple, discrete, serious efforts to obstruct justice is
> appropriate.   The case is way out of the heartland.
> There's been the most persistent and pervasive effort to
> obstruct justice in the course of this case that I've
> encountered in my 23 years as a federal judge . . . .

Id. at 108:14-19.  The First Circuit summarily affirmed Arias's

conviction and sentence (Docket No. 289).

B.  Section 2255 Proceedings

Acting pro se, Arias filed the instant motion pursuant to

28 U.S.C. §2255 to vacate, set aside, or correct her sentence

(Docket No. 292).   She subsequently filed more than twenty

letters supplementing her original §2255 motion.   On December

10, 2013, the court ordered her to file an amended §2255 motion

that contained all of the claims that she wished to raise, and

which would supersede all prior filings.  See December 10, 2013

Memorandum and Order (Docket No. 373).

Arias filed her amended motion on February 11, 2014 ("2255

Motion")  (Docket  No.  383).   Her  motion  raises  seventeen

ineffective assistance of counsel claims, an alleged violation

of  the  government's  duty  to  disclose  material  exculpatory

evidence under Brady v. Maryland, 373 U.S. 83 (1963), a due

process  claim,  and  a  cruel  and  unusual  punishment  claim.

Because  many  of  her  claims  alleged  that  Mr.  Espinosa's

---

[2]  In characterizing the sentence as a "departure," the court
misspoke.  In view of the enhancements, the sentence imposed was
within the Guideline range.

performance was unconstitutionally deficient, the court ordered
Mr. Espinosa to submit an affidavit addressing her allegations.
See April 4, 2014 Order (Docket No. 391).  Mr. Espinosa has
submitted an affidavit (Docket No. 395).  The government has
responded to Arias's amended petition, arguing that it is not
meritorious and should be dismissed (Docket No. 406).

III.  LEGAL STANDARD

    A.  Review Under 28 U.S.C. §2255

    28 U.S.C. §2255 provides a federal prisoner with a means to
collaterally attack her sentence.  As the First Circuit has
explained:

> 28 U.S.C. §2255 sets forth four grounds upon which a
> federal prisoner may base a claim for relief: (1) "that the
> sentence was imposed in violation of the Constitution or
> laws of the United States;" (2) "that the court was without
> jurisdiction to impose such sentence;" (3) "that the
> sentence was in excess of the maximum authorized by law;"
> and (4) that the sentence "is otherwise subject to
> collateral attack."

Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994)
(quoting Hill v. United States, 368 U.S. 424, 426-27 (1st Cir.
1994)).

    The Rules Governing Section 2255 Proceedings require a
motion to "(1) specify all the grounds for relief available to
the moving party; [and] (2) state the facts supporting each
ground . . . ."  See Rules Governing Section 2255 Proceedings
for the United States District Courts, Rule 2(b).  The court may

either summarily dismiss a prisoner's §2255 claim or grant an evidentiary hearing to determine if it is meritorious.  28 U.S.C. §2255(b) provides:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. §2255(b).   A prisoner's <u>pro</u> <u>se</u> petition must be "liberally construed . . . [and] a <u>pro</u> <u>se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

The First Circuit elaborated the test for granting an evidentiary hearing in a §2255 proceeding in <u>United States v. McGill</u>, 11 F.3d 223 (1st Cir. 1993).   As the First Circuit wrote:

> When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. <u>See</u> <u>Mack v. United States</u>, 635 F.2d 20, 26-27 (1st Cir. 1980); <u>United States v. DiCarlo</u>, 575 F.2d 952, 954 (1st Cir. [1978]), cert. denied, 439 U.S. 834 (1978).   In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.

We have distilled these principles into a rule that holds a hearing to be unnecessary "when a §2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974). In other words, a "§2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984) (citations omitted).

Id. at 225-26 (some citations omitted); see also United States v. Panitz, 907 F.2d 1267 (1st Cir. 1990); David v. United States, 134 F.3d 470, 478 (1st Cir. 1998) ("To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings."). "Moreover, when . . . a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225.

B.   Ineffective Assistance of Counsel

"To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [a movant] must show both deficient performance by counsel and resulting prejudice." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (citing

Strickland v. Washington, 466 U.S. 668, 687 (1984)); see also Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). "The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).

"In order to satisfy the 'deficient performance' prong, [a movant] must show that his trial counsel's representation 'fell below an objective standard of reasonableness.'" Peralta, 597 F.3d at 79 (quoting Strickland, 466 U.S. at 688). The court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. "The defendant, as a result, must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Phoenix II, 233 F.3d at 81 (internal citations omitted); see also Prou v. United States, 199 F.3d 37, 47-48 (1st Cir. 1999); Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999).

The court must respect counsel's strategic choices, recognizing that "[t]he law does not require counsel to raise every available nonfrivolous defense." See Knowles v.

Mirzayance, 556 U.S. 111, 127 (2009). Furthermore, counsel also has a "right to ignore frivolous claims pressed by clients," and is "not required to waste the court's time with futile or frivolous motions." United States v. Hart, 933 F.2d 80, 83 (1st Cir. 1991) (citing United States v. Wright, 573 F.2d 681, 684 (1st Cir. 1978).

As to the second prong, "[u]nder Strickland, a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Porter v. McCollum, 130 S. Ct. 447, 452 (2009) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Peralta, 597 F.3d at 79-80.

"[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "Addressing the prejudice prong prior to evaluating counsel's conduct is a permissible approach and even endorsed where more efficient." Gonzalez-Soberal v. United States, 244 F.3d at 273, 277-78 (1st Cir. 2001).

IV.  ANALYSIS

A.  Ineffective Assistance of Counsel Claims

During Arias's sentencing hearing, the court observed that she had affirmed on at least six occasions throughout the trial that she was fully satisfied with Mr. Espinosa's assistance. See April 14, 2008 Tr. at 15:10-19.  Furthermore, after the trial, the court "commend[ed] counsel for their energetic efforts," and observed that "Mr. Espinosa worked hard and was fully effective in the circumstances." See Dec. 7, 2007 Tr. at 133:7-13.

Arias now raises seventeen ineffective assistance of counsel claims.  Mr. Espinosa has submitted an affidavit addressing Arias's allegations.  However, "material issues of fact may not be resolved against the petitioner solely by relying on ex parte, sworn or unsworn, statements of the government or defense counsel." See United States v. Butt, 731 F.2d 75, 77-78 (1st Cir. 1984).

As explained below, each of Arias's allegations of ineffective assistance provides no more than a conclusory, vague, and unsupported claim of deficient performance by Mr. Espinosa.  Therefore, each of her ineffective assistance claims merits summary dismissal. See McGill, 11 F.3d at 625-26.

1.  Exculpatory Evidence

Arias claims that Mr. Espinosa's performance was unconstitutionally deficient because he did not investigate several pieces of information that she provided him that were helpful to her defense.  None of these claims is meritorious.

a.  Housing Assistance Fraud Alibis

Arias was convicted of three counts of theft of government property in violation of 18 U.S.C. §641.  The government alleged that Arias fraudulently obtained federal funds under the Section 8 Housing Assistance Program operated by the Department of Housing and Urban Development ("HUD").  The government presented evidence that she was receiving Section 8 housing assistance vouchers under multiple identities simultaneously, in violation of federal law.

In her petition, Arias claims that HUD gave her a second Section 8 voucher to move to a new apartment to escape an abusive boyfriend.[3]  She further claims that she was incarcerated in state prison immediately prior to moving into the Section 8 housing, and consequently could not have been receiving benefits

---

[3] At trial, Arias testified that her boyfriend was convicted of domestic violence in 1997, and that four years later, HUD gave her an exception to receive a second voucher.  See Dec. 6, 2007 Tr. at 11:10-25.

for multiple Section 8 apartments.[4]   She contends that Mr. Espinosa's representation was deficient because he did not follow up on either of these pieces of allegedly exculpatory information.   Even crediting Arias's contention that she provided this information to Mr. Espinosa,[5] Arias was not prejudiced by Mr. Espinosa's alleged failure to investigate because neither piece of information would have aided her defense.   Therefore, this claim is being dismissed.

The fact that Arias was a victim of domestic violence did not provide a defense to the housing voucher fraud charges.   The HUD rules did not allow a person to receive vouchers for more than one apartment.   See Dec. 3, 2007 Tr. at 50:11-51:1; 73:9-16 (testimony of HUD employees).   The court instructed the jury that "[a]n applicant or participant in an HUD Section 8 housing program is prohibited from receiving the benefit of tenant-based assistance for more than one housing unit."   Dec. 7, 2007 Tr. at 105:3-6.   On the voucher applications, Arias never indicated that she was receiving assistance for multiple Section 8 apartments.   See id. at 56:4-13.   The voucher applications

---

[4] At trial, Arias testified that she never moved into one of the apartments for which she received a voucher because she was "locked up."   See Dec. 3, 2007 at 146:17-147:11.

[5] Mr. Espinosa claims that Arias never gave him any information about domestic abuse until "very late in the trial."   Espinosa Aff., ¶55.

provided no exception for victims of domestic violence. See id. at 50:11-51:1; 73:9-16.

The evidence at trial established that Arias was receiving housing benefits under several different names simultaneously. See Dec. 3, 2007 Tr. at 22:10-35:6; 49:2-52:21; 66:25-72:13. As Mr. Espinosa explains, the discovery produced by HUD indicated that HUD was aware of the domestic abuse of Arias. See Espinosa Aff., ¶¶58-59. However, the documents contained no indication that Arias was authorized to receive benefits for multiple apartments. See id. Presenting evidence of abuse would have required Arias to admit that she was receiving multiple benefits in violation of federal law. Because there was no exception for victims of abuse to receive multiple vouchers or evidence that Arias received such an exception, this defense strategy would have enhanced the likelihood that she would be convicted. Therefore, failure to pursue this line of defense by investigating the domestic abuse allegations did not prejudice Arias.

Furthermore, Arias's time in state prison did not provide a defense to these charges because she had already applied and been approved for Section 8 assistance for multiple apartments, under multiple aliases, before she was incarcerated. The evidence established that Arias was receiving benefits from: October 1995 through April 2003 for one apartment, see Dec. 3,

15

2007 Tr. at 22:10-35:6; from August 2002 through July 2003 for a second apartment, see id. at 49:2-52:21; and from September 2002 until April 2003 for a third apartment, see id. at 66:25-72:13, 102:21-104:16.[6]  Arias was incarcerated in state prison for 364 days beginning on November 29, 2002.  See Gov.'s Mem. Regarding Def. Arias' Prior Convictions (Docket No. 152).  However, she had already registered for multiple housing assistance vouchers prior to November of 2002.  While she was in jail, her landlords were still receiving the housing subsidy checks from HUD for the apartments that she had registered.  See Dec. 3, 2007 Tr. at 94:19-97:24; 102:21-104:16.  Therefore, her incarceration did not provide any defense to the charge of simultaneously receiving multiple housing vouchers under different names.

Because neither the defendant's incarceration nor her history of abuse provided any defense to the charges against her, she was not prejudiced by counsel's decision not to conduct further investigation concerning them.  Therefore, this claim of ineffective assistance of counsel is being summarily dismissed. McGill, 11 F.3d at

---

[6] For the third apartment, the testimony established that Arias filled out the voucher application in person at the HUD office under the alias Jeannette Cintron, but represented to the landlord that Cabrera was the tenant.  See Dec. 3, 2007 Tr. at 66:25-72:13, 102:21-104:16.

b. <u>Passport Alibi</u>

At trial, Arias claimed that she was out of the country when several of the charged offenses were committed. In support of this alibi, she gave Mr. Espinosa a photocopy of her passport, which contained stamps seeming to show that she entered and left the Dominican Republic in December 2003. She claims that counsel could have confirmed the veracity of the passport stamps by subpoenaing the Dominican Republic Migration General or an Immigration Custom Specialist. Failure to perform this investigation, she claims, constituted ineffective assistance of counsel.

Mr. Espinosa's decision not to investigate the passport stamps was reasonable. <u>Strickland</u>, 466 U.S. at 690. As he explains in his affidavit, there was not even "the remotest credible evidence that her United States passport represented a valid alibi." Espinosa Aff., ¶65. He states that he and Arias's prior attorney, Mr. Moss, had discussed the passport and agreed that the stamps did not present a legitimate defense. <u>Id.</u>, ¶66. This is consistent with the court's conclusion during the trial that Mr. Moss had not produced the passport because he believed that the stamps were fraudulent. <u>See</u> April 27, 2008 Tr. at 98:14-21. Mr. Espinosa further states that Arias "admitted to [him] that she had gotten a relative of hers who worked for the Dominican Republic Government to put stamps in

17

her United States Passport showing that she had entered and left the Dominican Republic at times that would coincide with an alibi." Espinosa Aff., ¶64. This is consistent with the court's finding during the sentencing proceeding that Arias's passport stamps were forged. See April 22, 2008 Tr. at 99:23-100:8. Mr. Espinosa acted reasonably in not pursuing this frivolous defense. See Hart, 933 F.2d at 83.

Furthermore, Arias was not prejudiced by counsel's decision not to investigate the stamps. Since her sentencing, she has contacted the Dominican Republic immigration department, but has been unable to produce any credible evidence to support the authenticity of the stamps. The only documentation that she has provided is not credible and directly contradicts her testimony at trial. In support of her §2255 Motion, Arias submitted to the court a document purporting to be from the Dominican Republic General Department of Immigration. See Docket No. 384 at 16-17. This document states that Arias entered the Dominican Republic on December 4, 2003, on a direct flight from New York, and exited the Dominican Republic on December 20, 2003, on a direct flight to New York. This contradicts Arias's testimony at trial, where she stated that she flew from Boston, to Miami, to the Dominican Republic, and back along the same route. Dec. 6, 2007 Tr. at 18:3-20:5. She testified that she had a one hour layover in Miami on her return trip, and that she remembered

people in the Miami airport assisting her because she was recovering from surgery. Id. at 19:21-20:5. Given this contradiction, as well as Arias's attempts to obstruct justice during her trial and sentencing, the court finds the immigration document to be conclusively refuted by the credible evidence presented at trial. See McGill, 11 F.3d at 225-26. Furthermore, Arias's failed investigatory efforts prove that, even had Mr. Espinosa attempted to validate the passport stamps prior to trial, he would not have succeeded because they were falsified.

Second, the government presented rebuttal testimony proving that Arias had not left the country in December 2003. This evidence was unrelated to the validity of the Dominican passport stamps. A United States Customs supervisor testified that Arias could not have left and reentered the country by plane without appearing in the United States Customs' records. See Dec. 6, 2007 Tr. at 53:15-70:20. He also testified that there were no records of her leaving or entering the United States in 2002 or 2003. See id. Consequently, even had Mr. Espinosa investigated the passport stamps, there is not a reasonable probability that the jury would have credited Arias's alibi. See Strickland, 466 U.S. at 694.

Because Arias has failed to satisfy either prong of the Strickland inquiry, this claim is being summarily dismissed. See McGill, 11 F.3d at 225-26.

### c. Exculpatory Witness Onitxa Mercado

Arias claims that she told Mr. Espinosa about a witness, Onitxa Mercado, who may have committed some of the crimes with which Arias was charged. She claims that she "pointed out a discrepancy with birth dates on I.D. used to perpetrate a fraud, that could also show that it was indeed" Mercado who committed some of the crimes, including using the alias "Ms. Cintron"[7] to receive housing benefits. §2255 Motion at 7. She alleges that counsel did not investigate this exculpatory evidence. This allegation is contradicted by the record and is inherently incredible, and in any event Arias was not prejudiced by Mr. Espinosa's decision not to investigate. Therefore, this claim is being summarily dismissed.

Mr. Espinosa states that he has "no recollection of Ms. Arias ever providing [him] with the name of Onitxa Mercado as a potential exculpatory witness." Espinosa Aff., ¶77. He further states that, after discussing potential witnesses with Arias, he submitted the names of all potential witnesses to the court.

---

[7] Jeannette Cintron was an alias used by Arias when committing many of her frauds. Cintron was also the alias used by Arias in signing up for the third HUD housing voucher. See supra, note 6.

Id. The list submitted to the court does not include "Onitxa Mercado" or any similar name. See Def.'s List of Potential Trial Witnesses (Docket No. 142). The list also contains a section for "unidentified witnesses," but does not mention any witness fitting Mercado's description. See id. Additionally, the government presented eyewitnesses who identified Arias as the woman who committed the crimes that she claims Mercado committed. See, e.g., Dec. 3, 2007 Tr. at 68:9-69:6 (HUD employee identifying Arias as the woman who posed as a Ms. Cintron to sign up for HUD benefits). Finally, Arias did not mention Mercado during her two-and-a-half days of testimony at trial.

Therefore, Arias's claim that she informed Mr. Espinosa about Mercado and that Mercado committed some of the crimes that she was charged with is contradicted by the record and inherently incredible. See McGill, 11 F.3d at 225-26; cf. Hart, 933 F.2d at 83 (The defendant's "request for his counsel to track down and present as alibi witnesses 'that person' or 'certain persons' never named or located . . . could be deemed frivolous.").

Even if Arias had informed Mr. Espinosa about Mercado, she has not shown that she was prejudiced by his failure to investigate. To show prejudice, Arias would have to show "there is a reasonable probability that, but for [Mr. Espinosa's

failure to investigate], the result of the proceeding would have been different." Porter, 130 S.Ct. at 452 (quoting Strickland, 466 U.S. at 694). This would require her to show a reasonable probability that three things would have occurred. First, Mercado must have committed some of the crimes with which Arias was charged. Arias has provided nothing but a conclusory assertion to support this. Second, Mr. Epinosa would have had to be able to find Mercado. Given the lack of any mention of her in the evidence presented at trial, this could have been difficult. Third, Mercado would have had to agree to testify that she committed the crimes or provide some other evidence to exculpate Arias. This is unlikely given the Fifth Amendment right against self-incrimination. Arias's claim is, therefore, too attenuated to support a finding of a "reasonable probability" that a search for Mercado would have affected the result of her trial. See Porter, 130 S. Ct. at 452

Because Arias's contentions regarding Onitxa Mercado are contradicted by the record and inherently incredible, and because Arias has failed to show actual prejudice resulting from counsel's alleged failure to investigate Mercado, this claim is being summarily dismissed. See McGill, 11 F.3d at 225-26.

## 2. Alleged Conflict of Interest

Arias claims that she was denied effective assistance of counsel because Mr. Espinosa was retained to represent her by

her ex-boyfriend, Lorenzo Martinez.  She maintains that this created a conflict of interest that required Mr. Espinosa to recuse himself.  Arias does not explain why there was a conflict of interest or how it affected Arias's defense.  The court finds it implausible that any such conflict existed.  This claim is, therefore, being summarily dismissed.  See David, 134 F.3d at 478.

The First Circuit has explained when a conflict of interest can rise to the level of ineffective assistance of counsel:

> It is well settled that "some conflicts of interest so affront the right to effective assistance of counsel as to constitute a *per se* violation of the [S]ixth [A]mendment." United States v. Aiello, 900 F.2d 528, 531 (2d Cir.1990) (citing Cuyler[ v. Sullivan, 446 U.S. 335, 349-50 (1980))].  Such is the case where a lawyer suffers from an actual conflict of interest that prevents him or her from presenting a vigorous defense of a defendant.  United States v. Eisen, 974 F.2d 246, 264 (2d Cir.1992). . . .

> This circuit has held that in order to show an actual conflict of interest, a defendant must show that (1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties.  Guaraldi v. Cunningham, 819 F.2d 15, 17 (1st Cir.1987) (citations and quotations omitted).

United States v. Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir. 1994).  To prevail on a claim of unconstitutional conflict, a "defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his

23

lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).

Arias's claim that Martinez paying her legal fees created a conflict of interest is inherently implausible. Martinez was still Arias's boyfriend throughout the trial and was assisting her in her defense at her direction. See, e.g., Dec. 5, 2007 Tr. at 110:18-111:8. They were still dating when Arias was sentenced. See April 22, 2008 Tr. at 46:10-11. Martinez has submitted a letter in support of her §2255 Motion. See §2255 Motion, Exhibit B (Docket No. 384). Therefore, any conflict of interest due to the fact that he was her "ex" boyfriend would not have existed during Mr. Espinosa's representation of Arias.

Furthermore, Arias did not object to Mr. Espinosa's alleged conflict of interest at trial. In fact, she repeatedly affirmed that she was satisfied with his representation. See April 14, 2008 Tr. at 15:10-19. Mr. Espinosa's affidavit confirms that no conflict existed. He states that: he had never met Martinez before he began representing Arias; Martinez was never involved in Arias's case other than knowing court-scheduled dates; and he never discussed specifics of her case with Martinez or gave him any discovery regarding the case. Espinosa Aff., ¶¶21-25. Espinosa maintains that the fact that Martinez was paying the legal fees "did not cause or create any conflict of interest."

Id., ¶21. The court finds Mr. Espinosa's contention credible in light of the record.

In addition, Arias has neither alleged that the conflict had any effect on her representation, nor alleged any facts that would support such an inference. Arias does not claim that Martinez committed any of the crimes with which she was charged. Nor does she claim that there was any defense strategy that counsel declined to pursue because it would have harmed Martinez. Therefore, she has provided no reason to believe that her defense was affected by the alleged conflict of interest. See Soldevila-Lopez, 17 F.3d at 486.

Arias has failed to show that any actual conflict of interest existed or that she was prejudiced by the alleged conflict in any way. This claim is, therefore, unmeritorious and is being dismissed without an evidentiary hearing. See McGill, 11 F.3d at 225-26.

### 3.  Lack of Communication Regarding Trial Strategy

Arias claims that Mr. Espinosa's performance was deficient because he did not review trial strategy with her or keep her informed of developments in her case. She claims that if they had discussed trial strategy, she would have informed him of witnesses that would have exonerated her. Arias's contention that Mr. Espinosa did not prepare her for trial or communicate with her is "conclusively refuted" by the record. See McGill,

11 F.3d at 225.   Furthermore, Arias provides no information about what witnesses she knew of or what their testimony would have been.   See Rules Governing Section 2255 Proceedings, Rule 2(b).  Consequently, this claim is being summarily dismissed.

Mr. Espinosa states that "[b]etween [his] second meeting with Ms. Arias and subsequently until she refused to speak with [him] after dismissing [him] amid the trial before this Court, [he] would visit Ms. Arias no less than three times per week to prepare for her case."  Espinosa Aff., ¶34.   He describes several specific instances where they discussed trial strategy. See id. ¶¶64-67, 77-82, 85-87, 102.  He further explains that he made repeated attempts to visit her to discuss her pre-sentencing report after she dismissed him as her attorney, and that she refused to see him or discuss the case.  See id. ¶¶103-106.

Mr. Espinosa's contentions are corroborated by Arias's statements throughout her trial.  Arias told the court that Mr. Espinosa had frequently visited her to prepare for trial.   See Nov. 19, 2007 Tr. at 6:5-13.   Furthermore, during her sentencing, the court noted that Arias had stated that she was "fully satisfied with Mr. Espinosa" on at least six separate occasions throughout trial.  See April 14, 2008 Tr. at 15:10-19. The court also observed that she had frequently communicated

with the court directly by letters, and could have freely raised any complaints regarding Mr. Espinosa. See id. at 15:20-16:1.

The record thus establishes that Mr. Espinosa was in regular communication with Arias in preparation for trial. Arias's contention that she knew of exculpatory witnesses is conclusory and unsupported. No evidentiary hearing is warranted and this claim is being summarily dismissed. See McGill, 11 F.3d at 225-26.

### 4. Delayed Disclosure of the Passport

Arias claims that Mr. Espinosa was ineffective because he intentionally delayed disclosing her passport to the government and the court in violation of a court order. She does not allege that the delayed disclosure affected her defense. Espinosa believed that the passport stamps had been forged and, therefore, did not intend to introduce the passport into evidence until he was forced to by Arias. See Espinosa Aff., ¶¶64-67. In any event, Arias was able to introduce her passport because the government withdrew its objection to the delayed disclosure. See Dec. 6, 2007 Tr. at 5:16-19. Therefore, Arias was not prejudiced by counsel's delayed disclosure of the passport. Accordingly, this claim is being dismissed. See McGill, 11 F.3d at 226.

5.  Admission of Prior Convictions

Four of Arias's claims relate to Mr. Espinosa's failure to object to the admission of certain convictions to impeach Arias. The only prior convictions that were introduced against Arias were admitted pursuant to the mandatory admissibility provision of Federal Rule of Evidence 609(a)(2).  Therefore, none of these claims is meritorious.

a.  (1) Juvenile Criminal History, (2) Dismissed Charges, and (3) A Conviction that Arias never incurred

Arias claims that Mr. Espinosa's failure to object to the "government's introduc[tion of] prior juvenile history, as well as dismissed cases" amounts to ineffective assistance of counsel.  See 2255 Motion at 6.  She also contends that the "[p]rosecution introduced a prior conviction that petitioner adamantly states is not her."  Id.

Arias does not explain to which convictions she is referring or provide any means for the court to evaluate her claims.  The government did not introduce any convictions that Arias incurred prior to 2002, when she was 24 years old.  See Dec. 5, 2007 Tr. at 72:6-73:3.  There is no evidence that she was not the person involved in any of the convictions that the government introduced.  Indeed, she admitted to each of them under oath at trial.  See id.  Nor has Arias provided any information indicating which convictions introduced by the

28

government were subsequently dismissed. Furthermore, Mr. Espinosa states that he and Arias reviewed her criminal history and filed a motion in limine to preclude the convictions that they felt should be excluded. Espinosa Aff., ¶¶85-88; see also Motion in Limine (Docket No. 155). No prior convictions contained in the motion in limine were admitted against Arias at trial. See Dec. 3, 2007 Tr. at 10:1-5; see also Dec 3, 2007 Tr at 131:18-132:16 (direct examination); see Dec. 5 Tr. at 72:6-73:3 (cross examination).

Arias's claims are refuted by the trial record. In any event, she has not provided sufficient factual information to enable the court to determine to which prior admitted convictions she is referring. See Rules Governing Section 2255 Proceedings, Rule 2(b). Therefore, these claims are being dismissed. See McGill, 11 F.3d at 226.

### b.  Overly Prejudicial Prior Convictions

Arias claims that Mr. Espinosa was ineffective because he did not object to the admission of her prior convictions, "including one for forgery." See 2255 Motion at 7. She argues that this was prejudicial because the prior convictions were very similar to the charges that she was facing at trial. This claim is not meritorious because the Federal Rules of Evidence mandated that Arias's prior convictions be admitted for impeachment purposes. Therefore, Mr. Espinosa's decision not to

object was reasonable and Arias was not prejudiced by his decision not to raise this frivolous objection. See Hart, 933 F.2d at 83.

Federal Rule of Evidence 609(a)(2) requires the court to admit a witness's prior conviction for impeachment purposes "if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement." The only convictions that were introduced to impeach Arias were admitted under this rule: two prior convictions for forgery, one for credit card fraud, and several counts of making false and fraudulent statements in filing a tax return. See Dec. 3, 2007 Tr. at 10:1-5 (court explaining which convictions would be admitted); see also Dec 3, 2007 Tr at 131:18-132:16 (direct examination); Dec. 5 Tr. at 72:6-73:3 (cross examination).[8] The court found that it did not have discretion to exclude these convictions under Federal Rule of Evidence 609(a)(2) because the elements of each crime required the government to prove a dishonest act or false statement. See Nov. 20, 2007 Tr. at 28:23-29:9. Furthermore, the court repeatedly instructed the jury that the prior convictions could only be used to assess the credibility of

---

[8]  Based on a motion in limine filed by Mr. Espinosa (Docket No. 155), the court excluded convictions for kidnapping, threatening, receiving stolen property, and larceny. See Gov.'s Memo. Regarding Def. Arias' Prior Convictions (Docket No. 152).

Arias's testimony in court. See, e.g., Dec. 3, 2007 Tr. at 131:3-12; Dec. 7, 2007 Tr. at 80:17-81:3.

Mr. Espinosa's decision not to object was reasonable because he had no plausible grounds on which to object. Furthermore, Arias was not prejudiced by Mr. Espinosa's failure to object to the admission of these convictions because, under the Rules of Evidence, the convictions would have been admitted over his objection. See Hart, 933 F.2d at 83. This claim is, therefore, being dismissed without an evidentiary hearing. See McGill, 11 F.3d at 225-26.

### 6. Eyewitness Testimony Cautionary Instruction

Arias alleges that Mr. Espinosa's failure to object to the lack of a special cautionary jury instruction on the accuracy of eyewitness identification amounts to ineffective assistance of counsel. Mr. Espinosa reasonably decided that a cautionary instruction was not merited in this case. Furthermore, Arias was not prejudiced by his decision not to request an instruction. Therefore, this claim is unmeritorious and is being dismissed.

Mr. Espinosa's decision not to request a cautionary instruction was reasonable. The circumstances of this case did not merit such an instruction. The eyewitness testimony against Arias was corroborated by overwhelming documentary evidence showing Arias's frauds. Furthermore, the two primary

eyewitnesses against Arias knew her well. As Mr. Espinosa explains, "a Lieutenant from the Lynn Police Department with many years of familiarity with Ms. Arias identified her in photographs." Espinosa Aff., ¶89. Lieutenant Reddy had met Arias several times over many years, including extensively questioning her in connection with the charged crimes. See Nov. 26, 2007 Tr. at 84:20-131:16. Another eyewitness against Arias was her landlord, who had frequent in-person interactions with her over the course of a year. See Dec. 3, 2007 Tr. at 90:25-93:18. In view of these witnesses' strong familiarity with Arias, their repeated opportunities to observe her, and the fact that several of the identifications were based on photographs that the witnesses were presented with in court, the factors that would ordinarily merit a cautionary instruction were not present. See United States v. Candelaria-Silva, 166 F.3d 19, 37 (1st Cir. 1999).

Furthermore, Mr. Espinosa's decision not to request a cautionary instruction was reasonable because the court gave the jury cautionary instructions regarding identification testimony that were similar to an eyewitness cautionary instruction. The court instructed the jury that, in evaluating every witness's testimony, the jury should ask: "Would the witness have a good memory? Did the witness have a good opportunity to observe what was testified to?" Dec 7, 2007 Tr. at 76:15-18. The court also

gave an instruction regarding identification testimony generally: "When a witness gives identification testimony, as with any other testimony, you must first decide whether the witness is telling the truth as he or she understands it, but . . . you must also decide how accurate the identification was." Id. at 78:8-12. Given this instruction, Mr. Espinosa's decision not to request an eyewitness instruction was not "outside the range of reasonable professional assistance." See Strickland, 466 U.S. at 690.

Additionally, Arias has not provided reason to believe that Mr. Espinosa's failure to request a cautionary instruction prejudiced her. The court was not required to give a cautionary instruction even if it had been requested. See United States v. Gray, 958 F.2d 9, 12 n. 2 (1st Cir. 1992). In addition, several people who knew her well, including Lieutenant Reddy and her landlord, identified Arias as the person committing crimes in photographs. There was, therefore, no question about the witness's opportunity to observe her or their familiarity with her appearance. Furthermore, the photographs were admitted into evidence. The jurors had the opportunity to judge for themselves whether Arias was the woman depicted. Finally, the court's jury instruction covered many of the issues that an eyewitness cautionary instruction is designed to address. Therefore, even if Mr. Espinosa had requested and received a

33

cautionary instruction, there is not a reasonable probability that the jury would have discredited the eyewitness testimony. See Porter, 130 S. Ct. at 452.

Because Arias's allegations do not satisfy either prong of Strickland, this claim is being dismissed without an evidentiary hearing.

### 7. Premature Juror Discussion

During the trial, a juror wrote a note to the court stating that "there's been some talk among the jurors . . . about the trial, during our break, and I am confused about how much is permissible." See Nov. 29 Tr. at 5:14-21. The court, the government, and Mr. Espinosa all agreed that the court should remind the jury not to discuss the case any further until they are sent to deliberate, and to disregard any discussions they had up to that point. Id. at 5:22-7:8. The court gave the agreed-upon instruction to the jury. Id. at 8:24-10:2.

Arias alleges that Mr. Espinosa acted unreasonably in not requesting a mistrial because the premature discussion meant that the jury deliberations would be tainted. Mr. Espinosa's decision not to request a mistrial was reasonable and did not prejudice Arias. Therefore, this claim is not meritorious.

Mr. Espinosa's decision not to request a mistrial was reasonable because the note from the jury simply indicated that there had been some preliminary discussions about the case. It

was reasonable to believe that the court's jury instruction would cure any risks posed by the premature juror discussions. See United States v. Diaz, 597 F.3d 56, 63-64 (1st Cir. 2010) (explaining that "an emphatic reminder that the jurors should not talk about the case" is generally the appropriate response to premature juror deliberations).

Furthermore, Arias was not prejudiced by Mr. Espinosa's decision not to request a mistrial. A mistrial would only have been appropriate if "no curative measures appear[ed] appropriate." Id. at 63. The court would not have granted a mistrial based on the reported premature juror discussions. Absent evidence that the jurors had begun reaching factual conclusions, a mistrial would have been an unreasonable remedy. See id. Here, the court and both attorneys agreed that a curative instruction was sufficient to address any risk of prejudice. No juror expressed any subsequent concern about premature discussions. Because a mistrial was not warranted under the circumstances and would not have been granted, Mr. Espinosa's failure to request a mistrial did not prejudice Arias.

Consequently, Arias has failed to state an ineffective assistance claim based on Espinosa's failure to request a mistrial, and this claim is being dismissed without an evidentiary hearing. See McGill, 11 F.3d at 225-26.

35

8.  PSR Findings

Arias claims that Mr. Espinosa did not discuss the
Presentence Report ("PSR") with her prior to her sentencing.
She argues that his performance was constitutionally deficient
because he failed to object to statements in the PSR, which were
"based on preposterous reasons." 2255 Motion at 10.  This claim
is unmeritorious because Arias fired Mr. Espinosa prior to
sentencing and rebuffed his repeated attempts to communicate
with her regarding the PSR.  Therefore, he could not object to
the PSR on behalf of Arias

Arias is correct that Mr. Espinosa did not object to any of
the PSR's findings.  However, Mr. Espinosa was no longer Arias's
attorney at the time of sentencing.  He, therefore, could not
object to the PSR on her behalf.  See April 4, 2008 Memorandum
and Order; see also March 18, 2008 Order (ordering Mr. Espinosa
to file a sentencing memorandum, but ordering Arias personally
to file any objections to the PSR).

Furthermore, as the court observed in the Order that
allowed Mr. Espinosa to withdraw:

> Arias has refused to accept a copy of the Presentence
> Report from either the Chief Probation Officer, who
> went to the facility at which she is detained to
> deliver it, or from Mr. Espinosa.  Mr. Espinosa writes
> that Arias refuses to speak to him and has instructed
> him to move to withdraw.  He has done so and,
> therefore, has not filed the sentencing memorandum
> that was due on March 25, 2008.  Arias has not
> retained new counsel.  Nor did she personally make the

36

[objections to the PSR] she was ordered to file on
March 27, 2008.

April 4, 2008 Memorandum and Order at 2-3. Even after he
withdrew as her counsel, Mr. Espinosa states that he made "at
least three efforts" to see her at the Bristol House of
Corrections, but she would not speak with him. See Espinosa
Aff., ¶¶104-06. Having compelled Mr. Espinosa withdraw as her
counsel prior to sentencing and refusing his repeated attempts
to communicate regarding the PSR, Arias cannot claim that his
assistance was ineffective at her sentencing.

Finally, Arias does not explain what findings in the PSR
were objectionable. Mr. Espinosa stated that he reviewed the
PSR as Arias's standby counsel and did not find anything that
was objectionable. Id., ¶107. Accordingly, even if Mr.
Espinosa did have authority to object to the PSR findings,
Arias's claim is conclusory and does not merit further
consideration. See Rules Governing 2255 Proceedings, Rule 2(b);
McGill, 11 F.3d at 225-26.

### 9. Government's Closing Arguments

Arias claims that Mr. Espinosa was unconstitutionally
ineffective for failing to object to comments the prosecutor
made during his closing arguments, when he implied that Arias
had lied about being a victim of domestic abuse. The
prosecutor's comments were not improper. Therefore, Mr.

37

Espinosa's decision not to object to the statements was reasonable and did not prejudice Arias.

Regarding Arias's claim that she was abused by her co-defendant, Cabrera,[9] the prosecutor stated: "[T]he story given to you by [Arias], I submit to you, is not credible, not possible." Dec. 7, 2007 Tr. at 19:4-5.  He went on to suggest that her claim of abuse by Cabrera was not credible because she had countless opportunities to get away from Cabrera or report the abuse during the months that they were committing crimes together, but she never did.  Id. at 19:6-12.

Mr. Espinosa was reasonable in not objecting because the prosecutor's remarks were appropriate.  In rejecting her challenge to the closing arguments, the First Circuit stated: "We do not agree with appellant's contention that the prosecutor was inflammatory, improperly vouched for witnesses, or attempted to replace the fact-finding function of the jury in a manner that should have prompted the court to act sua sponte in the absence of an objection." United States v. Arias, No. 08-1723 (1st Cir. 2009) (Docket No. 289).  In her 2255 Motion, Arias has

---

[9] Arias testified that she and Cabrera began dating while they were both in prison and continued dating after being released, and that Cabrera was violent and abusive toward her.  Dec. 3, 2007 Tr. at 133:2-135:8.  However, as explained previously, Arias did not claim that she committed the crimes under duress from Cabrera, but rather denied any involvement in the crimes. Arias also testified that she had been abused by a prior boyfriend, but the prosecutor did not make any comments about that abuse.

not identified any grounds on which Mr. Espinosa could have objected. The prosecutor did not mischaracterize Arias's testimony, allude to any knowledge beyond the evidence presented to the jury, or express a personal opinion as to Arias's veracity. See United States v. Wihbey, 75 F.3d 761, 771-72 (1st Cir. 1996) (explaining what constitutes improper remarks by a prosecutor during closing argument). Furthermore, any potential prejudice was mitigated by the court's instruction to the jury that the prosecutor's arguments were not evidence. See Dec. 7, 2007 Tr. at 73:15-22.

Arias has neither identified any statements by the prosecutor that were improper, nor shown any prejudice from the prosecutor's remarks. Consequently, this claim is being dismissed without an evidentiary hearing. See McGill, 11 F.3d at 225-26.

## 10. Psychiatric Evaluation

Arias claims that Mr. Espinosa's failure to appeal the court's denial of her request for a psychiatric evaluation amounts to ineffective assistance of counsel. In fact, the court did not deny her request for a psychiatric evaluation. Instead, Mr. Espinosa made a tactical decision not to present mental health evidence. This tactical decision was reasonable and did not prejudice Arias.

Prior to trial, Arias sent the court a letter, without Mr. Espinosa's knowledge, "requesting to have a psychiatric evaluation due to the fact that [she] was a victim of domestic abuse." See Nov. 19, 2007 Tr. at 4:2-5. When questioned by the court, Arias stated that she wanted a psychiatric exam so that she could present mental health evidence regarding the fact that she was a victim of domestic abuse during her case-in-chief. Id. at 7:19-25. The court instructed Mr. Espinosa to speak with Arias and decide whether she wanted to request funds to pursue a psychiatric evaluation. Id. at 8:13-24. At a subsequent hearing, Mr. Espinosa informed the court that:

> [He had] spoken with [his] client and [had] made the tactical decision not to pursue that psychiatric issue. At this point we are not going to be raising it in the course of the trial. As to the expert, we're not going to be needing an expert, we're not going to be seeking an expert in the course of this trial.

Nov. 20, 2007 Tr. at 5:5-11. The court responded that Mr. Espinosa could still request an examination if he later decided to present psychiatric evidence. See id. at 5:12-6:6.[10]

---

[10] The government, in its opposition, understands Arias to be arguing that Mr. Espinosa was ineffective for failing to appeal the court's denial of a competency examination. The court disagrees. To support her claim, Arias cites Williams v. Branker. A relevant case by this name does not exist. However, in Gray v. Branker, 529 F.3d 220 (4th Cir. 2008), the Fourth Circuit granted a writ of habeas corpus do to a state prisoner whose counsel failed to adequately investigate his mental condition prior to a capital sentencing. Based on her statements to the court at the November 19, 2007 hearing, the

Therefore, the court did not deny Arias's request for a psychiatric evaluation. Accordingly, there was not a denial for counsel to appeal. However, because Arias is proceeding pro se, the court construes her claim liberally to allege that Mr. Espinosa's decision not to request a mental health expert constituted ineffective assistance of counsel.

Mr. Espinosa's decision not to have Arias undergo a psychiatric evaluation was reasonable because, as the court instructed the jury, her history of abuse was not a defense to any of the charges against her. See Dec. 7, 2007 Tr. at 81:4-13. Throughout her two and a half days of testimony, Arias denied any involvement in the crimes. Psychiatric testimony would not have helped her defense in any way. Mr. Espinosa explains that she never disclosed any history of mental illness, but that if he had suspected that she was suffering from diminished mental capacity, he would have requested a psychiatric evaluation. See Espinosa Aff., ¶¶111-16.

Furthermore, counsel is not ineffective for failing to pursue every plausible avenue of defense. See Knowles, 556 U.S. at 127. Therefore, even if there was some plausible argument that Arias's history of abuse reduced her criminal culpability for the charged crimes, Mr. Espinosa was not ineffective for

---

court concludes that Arias is challenging counsel's failure to hire a psychiatrist to present evidence that Arias was a victim of domestic abuse.

failing to pursue that line of defense. Arias indicated no willingness to admit that she committed any of the crimes. Presenting a diminished capacity or duress defense would have been inconsistent with her trial strategy of asserting that she was not the person who committed the alleged crimes. Knowing that Arias refused to admit any involvement in the crimes, Mr. Espinosa's decision not to request a psychiatric evaluation did not "fall below an objective standard of reasonableness." Peralta, 597 F.3d at 79 (quoting Strickland, 466 U.S. at 688).

Additionally, because psychiatric evidence would not have been relevant to Arias's defense, Mr. Espinosa's failure to pursue a psychiatric examination did not prejudice Arias. Once again, any defense strategy involving psychiatric testimony would have required Arias to admit involvement in the crimes. Instead, she repeatedly denied any involvement in the crimes during her lengthy testimony at trial. Given the evidence establishing Arias's leading role in the conspiracy, it was reasonable for Mr. Espinosa not to present evidence that Cabrera had abused her.

In view of the foregoing, Arias has not shown that Mr. Espinosa's decision was unreasonable or that she was prejudiced by his failure to request a psychiatric exam. Consequently, this claim is being summarily dismissed. See McGill, 11 F.3d at 225-26.

11.  Espinosa's Disbarment

Arias claims that Mr. Espinosa was disbarred from practicing law from 1990-1997, and was disbarred for life as of 2012.[11]  She does not explain how Mr. Espinosa's prior or subsequent disbarment affected his representation of her, which occurred from 2006-2008 and arose out of his representation of unrelated clients on non-criminal matters.  Therefore, this claim is conclusory and is being summarily dismissed.  See Davis, 134 F.3d at 478.

B.  Brady Violation

Arias alleges that the government withheld the defendant's original HUD applications and paperwork, which would have "proved a pattern of domestic violence, and the need to be moved constantly, to avoid placing herself and her children, in the throes of an abusive person."  2255 Motion at 8.  She further claims that there were undisclosed records of HUD interviews that would establish that somebody else was receiving HUD benefits under one of Arias's aliases while Arias was in prison. She argues that counsel's failure to object to this nondisclosure or to raise it on direct appeal was objectively

---

[11] Mr. Espinosa explains that he resigned from the Massachusetts Bar in December 1990, and was reinstated in 1997.  Espinosa Aff., ¶¶5-7.  He was disbarred in November 2012 due to misrepresentations that he made to other clients in immigration and divorce matters between 2006 and 2009.  See Espinosa Aff., Ex. A.  He is entitled to seek reinstatement after eight years. See Id., ¶7.

unreasonable. However, she does not claim that Mr. Espinosa or her appellate attorney knew of this alleged nondisclosure. Construing her pro se petition liberally, the court understands Arias to be alleging that the prosecutor failed to turn over exculpatory records, in violation of Brady v. Maryland, supra.

Under Brady, a prosecutor's suppression "of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. However, "[i]n order for a hearing to be granted [to a §2255 petitioner], the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." Kafo v. United States, 467 F.3d 1063, 1067 (7th Cir. 2006) (quoting Prewitt, 83 F.3d at 819). Arias has provided no support for her claim that the government withheld evidence in this case. Mr. Espinosa states that Arias never informed him of such evidence. See Espinosa Aff., ¶97. Arias's conclusory, unsupported allegations of government misconduct do not merit further consideration. See McGill, 11 F.3d at 225-26.

Furthermore, even if the alleged undisclosed evidence existed, Arias has not shown that, as required under Brady, there is "a reasonable probability that, had the evidence been

disclosed in time to permit its use at the trial, the result in the proceeding would have been different." United States v. Maldonado-Rivera, 489 F.3d 60, 66 (1st Cir. 2007). As discussed earlier, there was no exception to HUD regulations for victims of domestic violence. See supra, §IV.A(1)(a). Therefore, even if there were documents evidencing Arias's history of abuse,[12] it would not have provided a defense to the charges against her. Additionally, there was evidence that Arias signed up to receive benefits under three different names before she went to prison. The fact that a person using one of her aliases was interviewed by HUD while she was in prison does not refute this evidence. Therefore, she has failed to explain why the alleged undisclosed evidence was material.

Arias has done no more than to conclusorily allege government misconduct. Therefore, her Brady claim and related ineffective assistance claim are being summarily dismissed. See McGill, 11 F.3d at 225-26.

C. Sixth Amendment Challenge to Sentence Enhancements

Arias argues that the enhancements to her Total Offense Level are unconstitutional and should be removed in view of the

---

[12] As discussed earlier, Mr. Espinosa states that the government did disclose records that contained documentation of Arias's history of abuse. See Espinosa Aff., ¶¶58-59. There was no indication that she was given an exception to hold multiple apartments, or that such an exception was possible under HUD regulations. See id.

Supreme Court's decision in Alleyne v. United States, 133 S.Ct. 2151 (2013). However, Alleyne does not apply to this case. In Alleyne, the Supreme Court held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury." Id. at 2155. Arias was not sentenced pursuant to a mandatory minimum sentence. Her sentence involved a Guideline range enhanced by "multiple, discrete, serious efforts to obstruct justice." Apr. 22, 2008 Tr. at 108:14-20.

Arias also contends that Apprendi v. New Jersey, 530 U.S. 466 (2000), requires that all of the factors that increased the Guideline range for her sentence be proven to a jury beyond a reasonable doubt. Apprendi held that a defendant's due process rights are violated when a judge-found fact increases the maximum sentence that the defendant faces beyond the maximum sentence allowed according to the facts reflected in the jury's verdict alone. Id. at 490. However, the Supreme Court explained that judges may still decide "sentencing factors" in determining an appropriate sentence. Id. at 494, n.19. Sentencing factors include "any facts that support a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense." Id. (emphasis added). The facts found by the court concerning Arias's sentence did not place the sentencing Guideline range beyond the statutory maximum sentence for the crimes of which she was

convicted. See 18 U.S.C. §1341 (maximum sentence for mail fraud is twenty years, or 30 years if it affects a financial institution); 18 U.S.C. §1344 (30 year maximum sentence for bank fraud). Therefore, Apprendi's rule is not implicated here.

Because the rules of Alleyne and Apprendi do not apply to Arias's sentence, this claim is being summarily dismissed.

### D. Cruel and Unusual Punishment

Arias claims that she was subjected to cruel and unusual punishment, in violation of the Eighth Amendment, when she was placed in the "SHU" segregation unit during trial. She alleges that this detention prevented her from accessing legal research and preparing for trial.

Arias does not explain how her placement in the SHU involved a "wanton and unnecessary infliction of pain" or was "grossly disproportionate to the severity of the crime warranting imprisonment." See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).[13] Furthermore, her contention that she was unable to prepare for trial is refuted by the record. During the trial, she stated that she was able to meet with Mr. Espinosa frequently to prepare for trial. See Nov. 6, 2007 Tr. at 6:2-

---

[13] Pretrial detainees are protected by the Due Process Clause rather than the Eighth Amendment. See Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 545 (1979)). "[H]owever, the standard to be applied is the same as that used in Eighth Amendment cases." Id.

13.   Mr. Espinosa states that he visited Arias at least three times each week throughout the entire time that he represented her.   See Espinosa Aff., ¶¶34-35.   Therefore, Arias was not prevented from preparing for trial by her confinement.

Because this claim is pled without supporting facts and is contradicted by the record, it is being summarily dismissed. See McGill, 11 F.3d at 225-26.

VI.   APPOINTMENT OF COUNSEL

If a §2255 Motion is unusually complicated and potentially meritorious, the court may, in its discretion, appoint counsel to represent the petitioner.   18 U.S.C. §3006A provides authority for this court to appoint counsel in cases in which a prisoner seeks relief under 28 U.S.C. §2241, §2254, or §2255. See 18 U.S.C. §3006A(2)(B).   In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that the denial of counsel will result in fundamental unfairness impinging on the party's due process rights.   See DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).   In determining whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the

litigant's ability to represent herself. See id. (citations omitted).

In view of the foregoing, none of Arias's claims are complex or present plausible bases for relief. The interests of justice do not require appointment of counsel in this case. See 18 U.S.C. §3006A(2)(B). Therefore, the court is denying Arias's request for appointment of counsel.

VI. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the court must "issue or deny a certificate of appealability [("COA")] when it enters a final order adverse to the applicant." To receive a COA, a petitioner must make "a substantial showing of a denial of a constitutional right." See 28 U.S.C. §2253(c)(3). In other words, a petitioner must "show[] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration,

that petitioner will not prevail." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003).

None of Arias's claims plausibly allege a violation of a constitutional right. Therefore, the court is denying a Certificate of Appealability on all claims. Arias may seek a COA from the Court of Appeals for the First Circuit. <u>See</u> §2255 Rule 11(a).

VII. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Petitioner's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Nos. 383, 384) is DENIED.

2. Petitioner's Motion for Appointment of Counsel (Docket No. 382) is DENIED.

3. Petitioner's Request for a Hearing (Docket Nos. 383, 384) is DENIED.

4. A Certificate of Appealability is DENIED for all claims.

UNITED STATES DISTRICT JUDGE